## Diaz et al. v. United States Coal & Coke Co. et al.

(Decided Nov. 9, 1937.)

J. LEONARD DAVIS for appellants.

WM. SAMPSON and FORESTER & SMITH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Jesus Diaz, a Mexican, was in the employ of the United States Coal & Coke Company at its mine in Lynch, Ky. Both had accepted the provisions of the

Workmen's Compensation Act (Ky. Stats. 1930, sec. 4880 et seq.). On October 14, 1930, Diaz was injured by an accident arising out of and in the course of his employment, and died as the result thereof on December 23, 1930. His wages were sufficient to authorize maximum compensation to dependents. Lena Gomez Diaz and her children applied for compensation. Sophia Sandival Diaz and her son, Jesus Diaz, Jr., also applied. Compensation was awarded Sophia and Jesus Diaz, Jr., and on full board review the award was affirmed. The award was also affirmed on petition for review to the Harlan circuit court. Lena Gomez and her children appeal.

The evidence on behalf of appellants is, in substance, as follows: Lena, whose last name was Garibay, when about 14 years of age, was married to Jesus Gomez in the state of Texas. Of this marriage there were born two children; a girl by the name of Narcissa, and a boy by the name of Reno Gomez. In the year 1917, Lena and Jesus Gomez were divorced. In the year 1923, she and her children moved to Lynch. There she lived with Jesus Diaz, and he supported her and her two children, who were under 16 years of age. Being only his common-law wife, she and Jesus Diaz decided to be married. The marriage ceremony took place on January 14, 1928, and was performed by the Reverend Alfred Hansens, a Catholic priest at Lynch, in the presence of Sisto Gevara and Pete Moreno. In June, 1929, Lena, who was ill, went to Detroit for treatment, and took her two infant children with her, and while at Detroit she received from Jesus Diaz several letters couched in endearing terms, but addressed to her in her maiden name of Garibay; but there was some evidence that this was an old Mexican custom. After remaining in Detroit for a while, she and her children went to McKeesport, Pa., where they were residing at the time of the death of Jesus Diaz. Before going to Detroit, Jesus Diaz gave her $300, and sent her various sums while there for the support of herself and children.

On the other hand, the evidence on behalf of appellees was in brief as follows: No marriage license was issued to Lena and Jesus Diaz by the clerk of the Harlan county court. Jesus Diaz was married to Sophia Sandival Diaz on December 28, 1929. The marriage was performed on a license duly issued, and the mar-

riage certificate was signed by T. R. McBrayer, justice of the peace of Harlan county. Sophia was living with the deceased at the time of his injury, and their infant son was born on November 2, 1930, and was living in the decedent's household at the time of his death. At the time of decedent's injuries, Lena and her children were neither living with, nor dependent on, him.

In addition to other findings of fact not material to this controversy, the board found that the claimant, Lena Gomez Diaz, was never lawfully married to the deceased, but was living separate and apart from him at the time of the accident, and was to no extent dependent upon him at that time; that her children, Narcissa and Reno, were not living in the household of the decedent at the time of the accident, and were not then, and had not for some time been, actually supported by him; that Jesus Diaz was lawfully married to Sophia Sandival Diaz on December 28, 1929, and at the time of his injury and death she was his lawful wife and had not voluntarily abandoned him; that Jesus Diaz, Jr., was born on November 2, 1930, and at the time of decedent's death was living in decedent's household; and the decedent left as total dependents his lawful widow, Sophia Sandival Diaz, and one child, Jesus Diaz, Jr.

On behalf of appellants, we have the following argument: Though common-law marriages are not valid in Kentucky, a marriage may be proved by those who were present and witnessed the ceremony, and, where a marriage is shown, every presumption will be indulged that it was legally performed. Vest's Adm'r v. Vest, 234 Ky. 587, 28 S. W. (2d) 782. Here a marriage was shown, and evidence to the effect that no license was issued in Harlan county was not sufficient to overcome the presumption that the marriage was illegally performed. In the first place, the credibility of the witnesses was for the Workmen's Compensation Board. In addition to the fact that no marriage license was issued by the Harlan county clerk, we have the following circumstances: Lena and the decedent lived together as man and wife for about five years without being married. After the alleged marriage, Lena left Lynch and went to Detroit for the purpose, as she claims, of being cured. She admits that she was cured in about two months, and then went to work. After that she was not well, but she did not remain in Detroit, nor did she return to Lynch.

On the contrary, she and her children went with her mother to McKeesport, Pa., and were living there at the time of decedent's marriage to Sophia. In addition to this, the decedent in several letters that he wrote to Lena generally addressed her as Mrs. Elena Garibay. In none of them did he refer to her as his wife, nor did any of them contain the slightest suggestion that they had ever been married. Neither Lena nor the witness, who claims to have been present at the marriage, claims that there was a marriage license. Of course, in determining a question of fact the Workmen's Compensation Board is not limited to direct evidence, but like other tribunals may consider all the circumstances. Notwithstanding the direct evidence on the question, we cannot say, as we must say before we are authorized to disturb the board's findings of fact, that there was an entire absence of competent evidence tending to sustain the board's finding that Lena and the decedent were never married. The same is true respecting the dependency of Lena's children. From all the facts and circumstances, the board had the right to conclude not only that they were not living with the decedent at the time of his injury, but had not been members of his household, or supported by him, for many months prior to his injury.

Judgment affirmed.