## Black Mountain Corporation v. Lucas et al.

(Decided Jan. 25, 1938.)

B. M. LEE for appellant.

GEORGE R. POPE for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The judgment confirms an award to the child of Frank Lucas, late employee of the Black Mountain Corporation. The appellant maintains that the award and judgment are erroneous because Lucas died of a pre-existing disease and not from the effects of carbon monoxide, or "bad air" as claimed. The board found that he was afflicted with heart disease, "which condition was aggravated and accelerated through and by the inhalation of noxious gases and smoke, commonly known as bad air"; that his pre-existing disease was 20 per cent. of the cause of the death, and the bad air 80 per cent. It reduced the award proportionately. The claimant, by cross-appeal, maintains that he is entitled to full compensation. The sole question, therefore, is whether there was any substantial and competent evidence to support the board's finding of fact. Section 4935, Kentucky Statutes.

Section 4880, Statutes, provides that:

"Personal injury * * * by accident * * * shall not include * * * the results of a pre-existing disease but shall include injuries or death due to inhalation in mines of noxious gases or smoke, commonly known as 'bad air.' "

Section 2739-19, Statutes, requires certain facilities for ventilating mines in order to protect the miners. It provides: "As working places advance, break throughs for air shall be made sixty feet apart," with certain exceptions not material here. It is shown that Lucas and his companion, Luke Prussian, were at work at a place 100 feet from a break through or ventilation opening. Prussian, through an interpreter, testified as to the place that, "smoke stay inside steady; bad smell; bothers them; could not take no breath." Asked whether the next day after dynamite had been shot there would be any smoke or fumes at the place, he said:

"Smell bad; kinder white smoke all the time; bad air; white smoke partly went out and partly stayed in."

He further testified that when Lucas started to work

he said he was feeling good. About four hours later, after they had finished loading a car of coal and were pulling slate, Lucas commenced to get sick and said he was "suffering inside." Upon his suggestion, Lucas attempted to leave the room and seek fresh air. He walked several paces and slumped down upon a pile of timbers and apparently lost consciousness. Prussian testified, "He turned his eyes to the top and then he couldn't answer when I called him." An alarm was sounded and Lucas was taken to the mouth of the mine. He was thought to be dead, but the first aid squad caused artificial respiration and applied a pulmotor two hours or such. Dr. Giannini, the company's doctor, came, and though he pronounced the man dead, he gave him a hypodermic injection and agreed that efforts to revive him should continue. Those efforts were made even after his removal to the hospital. Witnesses related their experience and the effects of bad air in mines upon them. In part, at least, the symptoms shown by Lucas indicated he so suffered.

Dr. A. C. Foster of London had had many years' experience treating miners. He was familiar with conditions in mines in relation to their ventilation, the accumulation of gases, and with their effect. On different occasions he had known one man to be overcome and another who was nearby not seriously affected. In answer to a hypothetical question submitting facts as the claimant had shown them to be, he expressed the opinion that Lucas' death was caused by having inhaled carbon monoxide. The evidence of two other physicians was likewise. Upon submission to them of a hypothetical question based upon the facts as the defendant claimed them to be, particularly as to Lucas' pre-existing disease and his excessive use of intoxicants, the doctors expressed the opinion that those things would make a man more susceptible to the effects of bad air.

On the other side the evidence was that the ventilation of the mine at Lucas' working place was sufficient and the air good. Fellow workers had not suffered any ill effects. Dr. Giannini had treated Lucas for two or three years. He had had smothering spells, a very fast heart, and some stomach trouble. They also introduced some evidence tending to show that Lucas was a heavy drinker. The doctors stated that Lucas was dead when

he was brought out of the mine. He and four other doctors had performed an autopsy the next day. In their opinion Lucas had died of heart failure, "on account of occlusion of the coronary artery and calcification and arterion sclerosis." The phrase, "occlusion of the coronary artery," in plain language, is the closing of an artery which arises from the aorta. There was obtained from these doctors evidence that the arteries were not fully closed, and some admissions of opinion tending to sustain the theory of carbon monoxide or other gas poison. There was developed also, perhaps as stronger evidence, that the heart condition may have caused Lucas to be overcome, because Prussian was not affected, although working a short distance away.

A submission to the claimant's doctors of the conditions disclosed by the post mortem did not materially change their opinions that Lucas had died from inhaling bad air.

There was, to say the least, sharp conflict in the evidence of the expert witnesses. The opinion of the Workmen's Compensation Board discloses a careful consideration of all the evidence. Analyzing it with the authorities, the board reached its conclusion. We are of opinion that there was ample evidence to sustain that conclusion and finding of fact.

Wherefore, the judgment is affirmed on both original and cross-appeals.