## Pioneer Coal Co. v. Lisenbee et al.

Jan. 13, 1939.

HIRAM H. OWENS for appellant.

GOLDEN & LAY for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Appellee, Robert Lisenbee, on November 20, 1936, while in the employ of appellant, Pioneer Coal Company, and in the line of duty, sustained an injury to his right eye by some pieces of coal striking the eyeball. Several days after this injury he was sent to the company physician, but the eye got infected and did not improve under treatment, whereupon he was taken to an eye specialist who removed his right eye on December 5, 1936.

Appellee states that before he went to the specialist the pain in his right eye was getting so great that it would go into his left eyeball and began to settle there; that his left eye became so sore that he could not put any pressure against the ball of the eye while bathing it with warm salty water; that during this time he began to notice that the vision of his left eye was failing, "like it wasn't clear seeing, like it was kind of milky or smoky; and lights would make my eye appear like it would be a blur or something like that."

On a hearing before the Workmen's Compensation Board, the board found that the vision of plaintiff's left eye was impaired more than 90% and that therefore he was "industrially blind" and totally and permanently disabled to perform manual labor; that the loss of vision in his left eye was a result of "sympathetic reflection"

from the right eye after the injury thereto. As a result of this finding appellee was awarded $15 per week for a period not to exceed 400 weeks. The appellant appealed this award to the circuit court and the court affirmed the award of the compensation board. This appeal is prosecuted from that judgment.

One single question is raised by this appeal, that is, whether or not there was any evidence of probative value before the compensation board that the loss of vision in appellee's left eye was caused by the traumatic injury to, and infection in, the right eye. Appellant concedes the law to be that the finding of the board must be affirmed by this court if there is any evidence of probative value to that effect. It is necessary therefore only to examine this evidence and ascertain whether there was evidence of probative value before the board justifying the finding that loss of vision in the left eye was due to the injury to the right eye.

The substance of appellee's testimony as to the extent of his injury and the effect thereof is given above. He states that as a result of this injury and the removal of his right eye, he cannot see with his left eye, although he walks around at home and in Pineville. He states that he cannot tell his own children apart. Other members of his family corroborate this portion of his testimony.

Dr. John H. Kincaid, an ear, eye, nose and throat specialist of high qualifications, states that the vision in appellee's left eye is 90% or more defective, thereby rendering him commercially blind, that is, to the extent that it is impossible for him to do any work requiring the use of his eyes and that this condition is permanent. He states that he made no examination as to the possible effects of syphilis but said that he attributed this loss of vision to traumatic injury of the right eye. In answer to a question as to what he attributed this loss of vision in appellee's left eye, he said: "I attribute it to the accident, yes, to the accident he received. I think he has a general weakened condition of the nerves and in the eye as result of the trauma." This witness seemed to be firmly of the opinion that appellee was not malingering.

Dr. Mason Combs is not a specialist in eye work, but states that he has had considerable experience along this line. He says that appellee is unable to focus his

eyesight on any given object and is practically and commercially blind. He says that infection in one eye may injure or destroy sight in the other eye in a few days; that there is no indication that syphilis is responsible for the loss of vision complained of. He makes the statement that if appellee's right eye showed inflammation, accompanied by pain, which caused his left eye to hurt and become sore to the touch, this, continuing for some days, would be sufficient to affect the vision of the left eye. We have, up to this point, stated the substance of the evidence on this issue introduced by appellee.

Appellant is very insistent that such defect of vision as might have existed in appellee's left eye was a result of syphilis and that its evidence established this fact conclusively; that the evidence for appellee, the substance of which is indicated as above, is in conflict with well-known and generally recognized scientific facts and contrary to the laws of nature and therefore does not have such probative value as is required to sustain this judgment. We will therefore review the substance of the testimony introduced in appellant's behalf.

Dr. Milus F. Gunn, eye, ear, nose and throat specialist of eminent qualifications, states that he examined appellee and that in his judgment he was malingering to some extent, but says that if a person has only one eye there is no certain way to estimate the amount of vision in the eye except by what the patient says. He found a squint in appellee's eye which was *probably* syphilitic. He sent a specimen of blood to the laboratory of Dr. Harry Weeter in Louisville for examination and this report showed appellee to be infected with syphilis in the tertiary stage. He says, however, that many people have syphilis in the tertiary stage with no loss of vision, but is *inclined to believe* that appellee's loss of vision in this eye is due to syphilis. He makes this statement: "We know that syphilis interferes with healing, but I couldn't say what percentage would enter into this case." He also says: "As far as I could make out, syphilis hadn't affected the vision in the left eye other than the slight paralytic squint he had, but paralytic squint wouldn't interfere with vision." This witness was very positive that the injury to appellee's left eye could not have resulted from injury to the right eye, saying, "No injury received to the right eye could in any manner interfere with his vision in the other eye."

Dr. Weeter testified as to an analysis of the blood specimen sent him by Dr. Gunn and states that it showed syphilis in the tertiary stage. He testifies that syphilis of this type frequently results in slow healing or slow recovery to the eye or any other part; that syphilis *could have caused* an internal squint and *could* produce marked impairment of vision and in advanced cases total loss of vision.

Dr. W. W. Potter, another ear, eye, nose and throat specialist, says that appellee had syphilis in the tertiary stage and that he found no evidence of traumatic injury to appellee's left eye except a small scar from an old injury which would not account for the extent of loss of vision claimed by appellee. He stated that his report showed that he believed appellee was telling the truth as to his lack of vision in this eye.

Dr. P. E. Giannini, company physician, who treated appellee after the alleged traumatic injury to his right eye, said he found no trauma, but only an ulcer. He treated appellee for several days and when the eye did not respond to treatment he sent him to a specialist to have it removed. He states that he found no impairment of vision of appellee's left eye, but that appellee claimed at that time that vision in that eye was impaired.

Appellant cites numerous cases from this and other courts as authority that by evidence is meant something of substance and consequence, carrying the quality of proof and having fitness to produce conviction; that evidence of alleged facts inherently impossible and absolutely at variance with well-established and universally recognized physical, mechanical and scientific laws, is not evidence within the meaning of the law, requiring evidence of some probative value to justify the finding of the workmen's compensation board. We are thoroughly in accord with this proposition of law advanced and it has been enunciated by this court in numerous cases. Clark et al. v. Young's Ex'x, 146 Ky. 377, 142 S. W. 1032; Louisville Water Company v. Lally, 168 Ky. 348, 182 S. W. 186, L. R. A. 1916D, 300.

However, we are not in accord with appellant's contention that the testimony in this case presented no substantial evidence to the board that the injury to appellee's right eye did not result in damage to the vision

in his left eye, nor do we subscribe to its theory that evidence introduced for appellant demonstrates conclusively that loss of vision in the left eye, if any, was due to syphilis alone and to no other cause.

The substance of the testimony we have quoted above reveals that one physician, a specialist in eye work, Dr. Kincaid, testified that in his judgment the injury to appellee's left eye was due to the accident and injury to the right eye. We quote above his exact words along that line. Dr. Combs, who, while not an eye specialist, yet has had considerable experience in this field, says that infection in one eye may injure or destroy the sight in the other eye in a few days. This direct testimony on the part of Dr. Kincaid taken in connection with the testimony of Dr. Combs, in our judgment, unquestionably amounts to substantial evidence of probative value evidencing the fact that loss of vision in the left eye was due to injury to the right eye.

We are at a loss to understand appellant's earnest insistence that testimony of physicians introduced by it established beyond peradventure of a doubt that loss of vision in appellee's eye was due to syphilis alone and that there can be no loss of vision in one eye as a result of injury to the other.

No witness introduced by appellant testifies with any degree of positiveness whatever that loss of vision in appellee's left eye was due to syphilis. The strongest testimony along this line elicited from the appellant's medical witnesses was the testimony of Dr. Gunn, who, in speaking of loss of vision to appellee's left eye, said, "I am inclined to believe it is due to syphilis," but his evidence quoted supra, makes it apparent that it was a matter of surmise and speculation with him and he would not say what percentage of the loss of vision was due to syphilis. Neither Dr. Potter nor Dr. Giannini, both of whom examined appellee, stated that any loss of vision in appellee's left eye was due to syphilis. Dr. Weeter did not examine him and, of course, was not competent to testify with reference thereto. His testimony reveals only the possible effects of syphilis on the vision. All doctors in the case are agreed that many people have syphilis in the tertiary stage with no loss of vision.

Appellant's insistence that the theory of "sympa-

thetic reflection," that is, that injury and infection in one eye may possibly bring about loss of vision in the other eye, is contrary to well-known and established and universally recognized medical knowledge is equally without merit in our judgment because the two physicians who testify for appellee state that this is possible and one of them even says that in his judgment loss of vision in appellee's left eye is due to the injury to the right eye. Dr. Gunn, appellant's witness, although he does testify positively that: "No injury received to the right eye would in any manner interfere with his vision in the other eye," in answer to this question: "Does impaired vision in the eye sometimes cause same in the other eye?" makes this answer: "Not unless there has been some 'sympathetic reflection.'" Dr. Gunn also makes it clear that he was unwilling to say that loss of vision in this eye was the result of syphilis. He even says that his examination of the eye disclosed no indication of syphilis.

Far from being a figment of the imagination, the theory of sympathetic reflection, that is, loss of vision in one eye due to injury to or infection in the other eye, seems to be so well established that it is accepted as a fact by law writers. We quote from Workmen's Compensation Law by Schnider, Volume 1, Section 250:

"Sympathetic affection of one eye by injury to the other. An employee was struck in the eye by a chip of steel, which caused total blindness of the injured eye, and all of the physicians advised an operation for its removal in order to prevent sympathetic ophthalmia of the other eye, which might cause its loss. The employee objected to the operation unless it could be performed in Italy. The court held that this objection was unreasonable, and that the disability of the employee was due to his own unreasonable refusal to undergo an operation."

"An employee suffered an accidental injury which caused a traumatic cataract. The other eye was sympathetically affected, causing total disability. This was held to be a compensable injury."

We are therefore of the opinion that there was substantial evidence before the board justifying the finding that the loss of vision in appellee's left eye was the re-

sult of injury to his right eye. We are of the opinion also that appellant's evidence in no wise establishes conclusively that such evidence for appellee is contrary to well-established and universally recognized principles of medical science.

Wherefore, the judgment is affirmed.