## Black Motor Co. v. Spicer et al.

March 20, 1942.

J. B. Snyder for appellant.

C. B. Spicer for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, W. C. Spicer, was an employee of the Black Motor Company in its business as dealer in automobiles at its establishment maintained and operated in Harlan, Kentucky. While engaged in his employment—and on September 20, 1939—he claims to have sustained an accident which produced hernia, and on August 26, 1940, he filed an application with our Workmen's Compensation Board for an appropriate award, both he and his employer having accepted the provisions of the Compensation Act. His application was resisted on the ground that his alleged hernia was not produced as a re-

sult of any accident which he sustained as its employee. Honorable L. C. Flournoy as one of the Board's referees first reviewed the testimony and rendered an opinion that the defense made to the claim by appellant should be sustained. Later the entire Board approved that finding and entered this order: "Plaintiff's claim is hereby dismissed," which of course carried with it the conclusion by the full Board that the testimony did not sustain plaintiff's claim and that the referee's recommendation was approved. Claimant then filed in the Harlan Circuit Court, on April 23, 1941, his petition for a review of the Board's finding. Appellant answered the petition making the same defense that it did before the Compensation Board, and the record made by the latter was filed in the cause. On submission the court reversed the judgments of both the referee and the Board, and directed specifically the judgment that it should render, which order was and is no doubt erroneous, even if the reversal was authorized by the testimony, since the judgment of the court should have gone no further than to direct the Board to set aside its former order and to render an award appropriate to the character of accident sustained (see Section 4884 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes), and for which error alone a reversal of the judgment is required.

But we are convinced that the court erred in reversing the findings of fact by the referee and the Board on the defense made to the claim, and especially so in view of the requirement in such cases that the facts found by the Board shall not be disturbed by the court in a reviewing case like this if the finding is sustained by any competent evidence. Conda Coal Company v. Caldwell, 267 Ky. 774, 103 S. W. (2d) 303; Hoenig v. Lemaster's Committee, 268 Ky. 44, 103 S. W. (2d) 708; Diaz v. United States Coal & Coke Company, 270 Ky. 565, 110 S. W. (2d) 290; Benito Mining Company v. Girdner, 271 Ky. 87, 111 S. W. (2d) 571; Harlan Fuel Company v. Jordan, 271 Ky. 562, 112 S. W. (2d) 982; Black Mountain Corporation v. Lucas, 271 Ky. 665, 113 S. W. (2d) 15; Black Mountain Corporation v. Stair, 271 Ky. 658, 113 S. W. (2d) 17; Pioneer Coal Company v. Lisenbee, 276 Ky. 308, 124 S. W. (2d) 94. Other preceding cases are found in those opinions. Those opinions also defined what is "competent evidence" within the rule, which is, that it must tend to the establishment of the fact in issue and not rest on mere surmise or guess. Furthermore it was

held in the case of Big Elkhorn Coal Company v. Burke, 206 Ky. 489, 267 S. W. 142, that circumstantial evidence might be considered by the Board in arriving at its factual conclusion, and which is but the application of the general rule that circumstantial evidence may be sufficient to overcome express contrary evidence, and especially so when the express testimony is loose, disconnected and lacking in its tendency to the logical establishment of the fact in issue. See Monson v. Com., decided Feb. 13, 1942, ... Ky. ..., ... S. W. (2d) .... Having thus outlined the practice, and the limitation of the court's and the Board's power and authority in the determination of factual issues, we will now turn our attention to the testimony in the case for the purpose of determining whether or not the court was authorized to render the judgment appealed from.

To begin with, the Legislature in enacting our Compensation Act must have had in mind the opportunities for the commission of fraud by claimants suffering from hernia, since it devoted an entire section (4884) to the consideration of that one affliction, and made specific provisions with reference to the establishment of such a claim. Plaintiff, in testifying as to how he received his injury—and in giving the conditions under which he received it, as he claimed—testified that a part of his duty was to push into his employer's garage second-hand automobiles handled by it (the sales of which plaintiff had charge)—being compensated by sales on commissions—and which duty he generally performed after closing hours of the day's sales; that in discharging that duty on the claimed occasion—while assisted by another helper who did not testify—he said: "I stepped on something slick, grease or something, my foot slipped, and I didn't really know what, a cold feeling came there" (where the hernia was located). Later, on being asked: "Just tell the Board how, what caused it, how it developed," he answered: "As I already said, I was pushing this car, my foot slipped, I didn't even stop, just kind of a cold feeling came there, come on me, I just kept putting the cars in." He further stated that he did not discover his hernia until he went home that night and it was then "about the size of a hen egg." Later on he testified that the occurrence "kinda gave me a cool feeling, didn't have much pain, just like something cold had hit me there, a piece of ice or something." He then testified that he was not made sick thereby, was not afflicted with

vomiting, nor did he have to lie down, nor did he ever thereafter cease work but has continued to labor in the same position since then. He thereafter visited two doctors, and also later stated that he sustained his injury for which he seeks compensation in *November* 1939 instead of *September* of the same year. One of the physicians he called upon was Dr. Howard, who made no examination except a casual inspection and who said that the other physician, Dr. Foley, made a more critical examination, the results of which both professional witnesses described in their medical terms, but which did not altogether coincide with the testimony of plaintiff as to the developments of his alleged hernia. They also intimated what we have heretofore learned from many expert witnesses in the consideration of similar cases that a hernia produced in the manner described by plaintiff almost universally produces pain and other consequences, immediately disabling the patient from laboring for a considerable while thereafter.

But, independently of the latter consideration, and notwithstanding plaintiff testified that he was not so afflicted prior to sustaining his alleged accident, there were other circumstances beside the ones to which we have referred clearly indicating—or at least having a tendency to establish the fact—that the hernia of which plaintiff complains was not produced on the occasion of his alleged accident and as a result of his "pushing" engagement at the time. It will be observed that he did not describe any condition whereby his strength was overtaxed, or whereby his physical body was thrown in any unnatural position calculated to produce the results he now claims. He merely testified that he was pushing the car. He does not say what amount of physical force he was exerting at the time; but only his "foot slipped." He does not say whether or not it was the foot on the same side of his body that the hernia appeared, nor did he say that the slipping caused any strained shape or twist in his body that would be calculated to produce hernia.

He did not file his claim until another fellow-workman for the same master made claim based upon a similar cause, and thereby nearly a whole year expired before he concluded to apply for an award, during all of which time he continued to labor in the same capacity. His two physician expert witnesses did not sustain him

on the determinative issue as to how his condition was produced. They only testified as to what they saw and which consisted in a developed hernia in his right groin with evidence of an approaching one in his left groin. That evidence possibly served more to contradict plaintiff's theory than to support it, since it would be somewhat out of the ordinary for one sprain to produce hernia on both sides of the body. In the circumstances the Board concluded that the facts did not justify a finding in plaintiff's favor and in doing so it regarded the evidence in its entirety sufficient to overcome plaintiff's express account of how he was injured, which is the only proof in the case sustaining his claim that his condition was produced as the result of any accident occurring in the course of his employment and arising out of it. The Board therefore having evidence before it to sustain its award, its conclusion may not be disturbed by a court on petition for review, under our cases supra and many others of like tenor that could be listed.

Some contention is made that the record fails to show that the full Board or any member thereof ever considered the case, or reviewed in any manner the finding of the referee, and that his finding, without having been made the award of the Board, is not subject to review by courts; but we have hereinbefore shown that the full Board did affirm the referee's dismissal of the claim and which completely answers this contention.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside and to dismiss plaintiff's petition.