JUVENILE AND DOMESTIC RELATIONS COURT, UNION COUNTY.

GERTRUDE REHDER, COMPLAINANT, v. CLARENCE N. REHDER, DEFENDANT.

Decided April 1, 1935.

For the complainant, *Benjamin H. Priest.*

For the defendant, *Myron L. Levy.*

WALDMAN, J. Complainant and defendant were married at Charleston, South Carolina, on or about December 15th, 1921. They lived together for about ten years. In October, 1931, complainant filed a petition in the Juvenile and Domestic Relations Court of Union county charging the defendant with desertion and non-support, and on October 30th, 1931, the defendant was found guilty and ordered to pay complainant the sum of $5 a week. Payments, under order of the court, were made by defendant from time to time without question or complaint. On March 8th, 1935, a rehearing was granted to the defendant upon his petition in which he alleged that complainant had another husband living at the time she married the defendant and, therefore, the complainant is not legally his wife and he is under no legal obligation to support her, and further asking the court to vacate the former order and dismiss the entire proceedings.

At the rehearing the defendant introduced into evidence an exemplified copy of a marriage certificate wherein it is set forth that on March 3d, 1917, one John L. Archer was married to Gertrude Chaffin (admittedly the maiden name of complainant) at Pensacola, Florida. The defendant fur-

ther testified upon direct examination that he did not know of his wife's previous marriage to Archer until early in the year 1935. He further stated that he never met Archer and admitted that he lived with complainant for sometime before he married her. Upon cross-examination defendant admitted that he was told about complainant's prior marriage by her aunt in North Carolina, who they visited four days after their marriage on their trip north, and also that he knew of this former marriage for sometime past through what he termed "hearsay evidence."

The complainant testified at the rehearing that the defendant knew that she was previously married at the time he married her and for that reason married her under the name of Laura G. Chaffin in Charleston, South Carolina, "to prevent any trouble." Complainant did not deny that she was previously married to the said John L. Archer, but testified that she received a letter from him in 1919 stating that he was getting a divorce and that the defendant burned this letter shortly after he married her. She stated that she believed that Archer obtained a divorce in Virginia and that she has not seen him nor heard from him for at least sixteen years.

A question was raised at the rehearing as to whether the Juvenile and Domestic Relations Court has jurisdiction to determine the validity of the present marriage between the complainant and defendant. Upon that point I shall hold that the Juvenile and Domestic Relations Court has jurisdiction to determine the validity of a marriage in non-support cases because it is elementary that if parties before the court are not husband and wife this court obviously cannot enter an order of support. Juvenile and Domestic Relations Courts, under chapter 157 of the laws of 1929 of the State of New Jersey, have jurisdiction to hear and determine disputes involving domestic relations under the act itself, or under the non-support provisions of "An act concerning disorderly persons" (Revision of 1898, *Pamph. L., ch.* 239, *p.* 942); 2 *Comp. Stat.* 1910, *pp.* 1926 *et seq., pp.* 1 *et seq.,* "An act for the settlement and relief of the poor (Revision of 1924,

*Pamph. L., ch.* 132, *p.* 252; *Cum. Supp. Comp. Stat.* 1924, *pp.* 161-124 *et seq.*), and the acts amendatory of and supplemental to the above entitled acts, together with any future acts, revisions, re-enactment, or new acts covering similar complaints or offenses, where the gravamen of the complaint under such acts is the failure or neglect of one member of the family to satisfy or discharge his legal obligations to another of a family. It also has jurisdiction to hear and determine in summary manner disputes involving the domestic relation, where the gravamen of the complaint is the failure to provide support or adequate support. In this very case complainant filed her petition in this court alleging that she was the wife of defendant, that he deserted her and that she sought support from him. It is very clear under the Juvenile and Domestic Relations Court act that this court has jurisdiction to hear the exact type of case that complainant has brought on to be heard.

The reported decision of Judge Barison in the Juvenile and Domestic Relations Court of Hudson county, in the case of *Zito* v. *Zito,* reported in 12 *N. J. Mis. R.* 761; 174 *Atl. Rep.* 421, is urged by counsel for complainant as dispositive of the law that Juvenile and Domestic Relation Courts have not jurisdiction to determine the validity of marriages. A reading of this decision does not bear out the contention alleged by counsel for complainant. In that case Judge Barison refused to take jurisdiction because the husband, against whom a non-support complaint was filed, set up as a defense a decree of divorce obtained in Nevada, and Judge Barison held that the Juvenile and Domestic Relations Court was not the proper forum to hear and determine any case where the validity of a foreign decree of divorce was involved. Also, in the Zito case Judge Barison held that it is a prerequisite to an award of support in the case where the marital status is in issue, that the court must first determine whether or not the relationship of husband and wife exists. Unlike the Zito case the instant case does not involve a question of the legality or illegality of a foreign divorce, but it involves the fundamental question as to whether the parties to this issue are husband and wife.

The defendant has not sustained his case by a preponderance of the evidence. In order for the defendant to prevail upon this application he must prove not only the former marriage of complainant to Archer, but that the latter was alive when defendant married complainant, and that complainant had not been divorced. He must further prove that when he married complainant he did so in ignorance of these facts and under a belief that she was free to marry him if she desired to do so. *Tyll* v. *Keller,* 94 *N. J. Eq.* 426; 120 *Atl. Rep.* 6. The defendant is bound to affirmatively prove his allegations that complainant had another husband living at the time he married her. *Keller* v. *Linsenmyer,* 101 *N. J. Eq.* 664; 139 *Atl. Rep.* 33. This he has failed to do.

When the marriage between complainant and defendant was solemnized it was *prima facie* a valid marriage (*Rex* v. *Twyning,* 2 *Barn. & Ald.* 386; *Vreeland* v. *Vreeland,* 78 *N. J. Eq.* 256; 79 *All. Rep.* 336. Our Court of Errors and Appeals, in the case of *Vreeland* v. *Vreeland, supra,* adopted the view in the English case of *Rex* v. *Twyning, supra,* holding that when the validity of the marriage is attacked upon the ground that one of the parties to it had a husband or wife living at the time it was contracted the party asserting its invalidity must not only prove the former marriage but also that the former husband or wife was then living. At the rehearing in the instant case all that the defendant showed was that complainant allegedly married a man named Archer some years before defendant's marriage to her was solemnized. He did not assert nor prove that Archer was alive at the time of defendant's marriage to complainant, and such failure of proof is fatal to his case. Our courts have recognized the strict necessity of such proof upon the party seeking to deny the validity of his marriage, and such requirement is enforced though it involves the proving of a negative. *Keller* v. *Linsenmyer, supra.*

Proof of a ceremonial marriage and living together in matrimonial relation raises a presumption of the legality of the marriage, and such presumption can only be overcome by clear and conclusive evidence of the validity of an alleged

first marriage, and that such marriage subsisted at the time the second marriage was entered into. The burden of showing this is on the petitioner (which would be the defendant in this case), and to the extent of negativing every reasonable possibility of its invalidity. *Keller* v. *Linsenmyer, supra.*

As has frequently been said by our courts, while the law presumes a continuance of life until seven years have elapsed from the time the person was last heard of, such presumption is not conclusive; and inasmuch as there is no proof in the case *sub judice* that the alleged former husband was alive when the parties to this suit were married, other than such as the court regards to be inconclusive, and the presumption of continuance of life, if regarded, would make complainant guilty of a bigamous marriage, the presumption of complainant's innocence of crime overcomes the presumption of such continuance of life, even though seven years have not elapsed. *Keller* v. *Linsenmyer, supra; Vreeland* v. *Vreeland, supra.*

In conformity with the foregoing views I shall deny the application of the defendant for a dismissal of the proceedings and order the defendant to support petitioner as heretofore ordered by this court.