## Hatfield Campbell-Creek Coal Co. v. Adams et al.

(Decided Dec. 6, 1938.)

CRAFT & STANFILL for appellant.

C. A. NOBLE, L. D. LEWIS and CHESTER DIXON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

John C. Adams was killed in appellant's mine February 3, 1936. Betty Adams filed a claim for compensation as his widow. Thomas Adams filed a claim as his dependent father, and denied that Betty was the deceased's widow. The Workmen's Compensation Board found that she had not been divorced from her former husband and had not in good faith been a member of the employee's household. It found the father dependent to the extent of 66 2/3% and awarded him $7.71 a week for a period of 335 weeks, with interest. On review the circuit court held that Betty Adams was a good faith member of the household of the deceased and wholly dependent upon him. The judgment reversed the finding of the Board, with directions that it award the father, Thomas Adams, compensation which the percentage of his dependency bears to the total dependency of the other claimant. The Coal Company appeals only as to the judgment directing the award to Betty Adams.

Betty Miller, a widow, married George Mullins on May 18, 1925. She was much younger than Mullins, who was 74 years old when he testified that, "Nothing happened, only I got dissatisfied and walked off" in February, 1929. Sometime afterward he suggested to his wife that they start suit and give each other a divorce. "I told her, 'You will have to marry again; I have nothing; don't need nothing, don't want nothing; don't aim to marry.'" She said: "She didn't aim to do it." He further testified, "I was easy put off; I wasn't caring." He had never sought a divorce and if she had obtained one "It was unbeknownst to me." Betty testified she and Mullins had agreed they would procure a divorce

from each other, and she had employed Clay Watkins, then an attorney at Jackson, who has since died, to bring suit. It is to be noted that since the couple were then residents of Perry County, the venue of such suit would not have been in Breathitt County. Watkins later advised her, so she testified, that it would be unnecessary because Mullins had already obtained a divorce from her and that she was a single woman. In rebuttal, she testified in some detail to her conversations and transaction with Watkins. This evidence was incompetent under the provisions of Section 606, subsection 2 of the Civil Code of Practice barring a party from testifying for himself concerning any verbal statement by one who is dead when the testimony is offered.

As shown by a certificate of a Baptist minister, a marriage ceremony had been performed by him on February 18, 1930, uniting "Betty Pratt" and "J. M. Adams" as husband and wife. This was introduced by the claimant as evidence of her marriage. It will be observed that it is not between Betty Miller or Betty Mullins and J. C. Adams, which was the name of the deceased employee. She lived with him as his wife, however, from then until his death and at all times was recognized as such. A deputy county court clerk of Perry county testified to a record of a marriage license issued January 17, 1930, to J. M. Adams and Betty Howard, "widowed," aged 42 years. The groom's father and mother were Thomas Adams and Mary Adams, and the bride's, Wilse Howard and Lucy Howard. The certificate of the minister recorded in the clerk's office is the same as that introduced except the name is Betty Howard instead of Betty Pratt. The certificates probably were for these parties, especially the license record, since the names of their parents are correctly stated. But confusion exists. She testified that she believed she was divorced and in good faith was the lawful wife of Adams during the six years following this ceremony.

Miles Miller, the claimant's son, testified that when Mullins and she separated, he went with her to see Watkins about getting a divorce. She paid him $10 and he stated he would get her a divorce. He was with her upon another call when the attorney told her that she was a free woman and there wasn't anything against her marrying. Her marriage to Adams was never questioned. Lee Howard testified that along in April, 1929, when he and Watkins were in the court house in Jack-

son they met Betty in the hall, and Watkins gave her some money and said: "I don't aim to take all the money you gave me," and further, "I have looked up the record and George has got a divorce and you are a free woman." Although a species of hearsay evidence (Louisville & N. Railroad Company v. Murphy, 150 Ky. 176, 150 S. W. 79), we think the evidence of these two witnesses competent on the question of good faith. John Will Combs, who conducted a store and lived near by, testified to the general recognition of the parties as husband and wife. He was "pretty sure," however, they had lived together before January, 1930, which it will be observed was before the marriage ceremony.

Of course, the marriage to Adams is conceded bigamous. Section 2097, Kentucky Statutes. The Compensation Act (Sec. 4894, Statutes) sets out the presumed dependents of a deceased employee and declares that in all other cases the relation of dependency shall be determined in accordance with the facts of each case existing at the time of the accident, "but no person shall be considered a dependent in any degree unless he be living in the household of the employee at the time of the accident," or unless he bears a certain relationship to him. This was intended to cover anyone living in the employee's household who was actually dependent upon him. Jones v. Louisville Gas & Electric Company, 209 Ky. 642, 273 S. W. 494. Though our statute does not expressly declare that such a one shall be "in good faith a member of the family or household," as some other statutes do, on a review of the authorities construing acts similar to ours in Nall v. Wakenva Coal Company, 236 Ky. 598, 33 S. W. (2d) 631, we construed it to mean "that a woman who lives with a man as his wife without any reason to believe that she is married to him" is not entitled to compensation because forbidden by public policy respecting such illicit relationship. But there a marriage ceremony was actually performed and the applicant for compensation believed in good faith that her former husband was dead and the marriage was valid and thereafter continued in good faith to live with the employee as his wife. It was held she was entitled to compensation. In Franklin Fluorspar Company v. Bell, 247 Ky. 507, 57 S. W. (2d) 481, and Black Mountain Corporation v. Cobb, 260 Ky. 662, 86 S. W. (2d) 662, the claimants did not know the employees had undivorced and living wives and had in good faith entered

into the marriage relation with them, and our conclusions were the same.

The situation is reversed in this case. The applicant is the one who contracted the bigamous marriage. A heavy burden rested upon her to establish the good faith relationship. The opinion of the Compensation Board reflects a sympathetic consideration. Nevertheless, it concluded from the circumstances that the claimant had not met the burden and could not be said to have contracted this marriage in good faith. Under familiar rules, there being evidence to support the Board's finding of fact, we think the circuit court should have affirmed it. See Diaz v. United States Coal & Coke Company, 270 Ky. 565, 110 S. W. (2d) 290, a case involving an application for compensation by two women, each of whom claimed to be the lawful wife of the deceased employee.

Judgment reversed.