McDONALD *v.* KELLY COAL COMPANY.

1. WORKMEN'S   COMPENSATION — DEPENDENTS — CONSTRUCTION   OF
TERM "FAMILY."
There must exist a condition devoid of moral turpitude in
order to create a family relationship entitling the survivors
to workmen's compensation under provision of the work-
men's compensation act restricting dependents to members
of the family of a deceased employee (CL 1948, § 412.6 [b]).

2. SAME—DEPENDENTS—CHILDREN OF WOMAN FOR WHOM DECEASED
PAID LIVING EXPENSES.
Children of woman with whom deceased employee had lived in
a meretricious relation before his death were not members
of his family within the meaning of the workmen's com-
pensation act, notwithstanding it appears he had paid the
living expenses of the group of 4 persons (CL 1948, § 412.6
[b]).

Appeal from Workmen's Compensation Commis-
sion. Submitted October 15, 1952. (Docket No. 89,
Calendar No. 45,288.)  Decided December 9, 1952.

Clydie "McDonald," guardian of Rosetta and Bar-
bara Jean Scales, presented her claim for compen-
sation for death of Milton McDonald against Kelly
Coal Company, employer, and Liberty Mutual Insur-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  58 Am Jur, Workmen's Compensation § 172.
[1, 2]  "Dependency" within workmen's compensation acts.   13
   ALR 686; 30 ALR 1253; 35 ALR 1066; 39 ALR 313; 53 ALR
   218; 62 ALR 160; 86 ALR 865; 100 ALR 1090.
Children of one with whom deceased workman was living in il-
   licit relations as dependents within workmen's compensation
   act. 154 ALR 698.

ance Company, insurer. Award to plaintiff. Defendants appeal. Reversed.

*Alexander, Cholette, Buchanan, Perkins & Conklin,* for plaintiff.

*Lacey, Scroggie, Lacey, Buchanan & Jones,* for defendants.

SHARPE, J. The controlling question in this case is whether Rosetta and Barbara Scales were members of Milton McDonald's family within the meaning of the compensation act. The essential facts are not in dispute. Milton McDonald, the deceased, was employed by defendant Kelly Coal Company, and was in their employ on May 24, 1950, when he picked up an electric hand drill and received a shock which resulted in his death. At the time of his fatal injury he was living with Clydie Scales and her 2 children in the city of Detroit.

Clydie and William Scales were married in 1935, and as a result of this marriage 2 children were born, namely Rosetta and Barbara Jean Scales. Some time in the year 1949, Clydie Scales and Milton McDonald began living together in an illicit relationship. The 2 children, above mentioned, also lived in the same apartment. The living expenses of this group were furnished and paid for by Milton McDonald.

The workmen's compensation commission, in awarding compensation for the benefit of the 2 children, made the following finding of facts:

"It is evident that Milton and the plaintiff were living together as husband and wife, although that relationship was illicit; that he was maintaining a home and supporting the plaintiff and her 2 minor children when he was fatally injured on May 24, 1950. The evidence also establishes that Milton was the sole

means of support for the plaintiff and her 2 minor children at that time. The conclusion is inescapable that the 2 children were totally dependent upon Milton for their support and maintenance on May 24, 1950. * * *

"That provision simply means that the 2 children could not be dependents within the act and entitled to dependency compensation, even though fully supported by Milton McDonald, unless they were members of his family. Plaintiff and her 2 children constituted the family before Milton joined them. He was under no legal obligation to support either the plaintiff or the children. However, he chose to accept the responsibility for their support when he started living with them. He then assumed the position as head of the group and took upon himself the obligation of supporting and maintaining the group. Thereafter, it was one household with Milton as the head. We think this group constituted a family according to the accepted definition of the term 'family.' The relationship between the parties here is sufficiently similar to that in the case of *Holmberg v. Cleveland-Cliffs Iron Company*, 219 Mich 204, to make the decision in that case controlling.

"We find that the plaintiff's 2 minor children, Rosetta and Barbara Jean, were members of Milton McDonald's family and totally dependent upon him for their support and maintenance on May 24, 1950, when he sustained the fatal injury. Plaintiff is entitled to compensation of $26 per week for the use and benefit of her 2 minor children, Rosetta and Barbara Jean, share and share alike. The award of the deputy commissioner is reversed."

Upon leave being granted, defendants appeal. Part 2, § 6, par (b) of the Michigan workmen's compensation act, as amended, being CL 1948, § 412.6, par (b) (Stat Ann 1950 Rev § 17.156) provides:

"No person shall be considered a dependent unless he or she is a member of the family of the deceased employee, or unless such person bears to said de-

ceased employee the relation of husband or widow, or lineal descendant, or ancestor, or brother or sister."

Plaintiff relies on *Holmberg* v. *Cleveland-Cliffs Iron Co.*, 219 Mich 204, in support of her theory that the 2 children were members of Milton McDonald's family. The plaintiff in the *Holmberg Case* was deserted by her husband in 1893 and left with her 4 children to support. Shortly after the desertion, plaintiff appealed to a first cousin, Albert Franzen, to come to her aid. Franzen came to the plaintiff's assistance, took up residence with her and acted as bread winner and head of the family. After some 27 years, Franzen was killed accidently in the course of his employment and plaintiff sought compensation benefits as a dependent member of the deceased's family. The board* held that she was entitled to such benefit.

In affirming an award of compensation we said:

"The acts of the parties for 27 years negative a mere contractual relationship, and show a home and family relationship founded and maintained because of helplessness on her part and a recognition thereof by him, and of the call of their common blood to his sense of moral obligation.  *  *  *

"We hold that, their blood relationship; his recognition and acceptance of the moral duty to provide her with a home; the devotion of his earnings for over a quarter of a century to their needs in the home; the negation of any sordid motive on the part of either; their joint efforts and labors for their common comfort in such home life; their community management of financial matters and his provision for her needs for 27 years, constituted her, in fact,

---

* The powers and duties of the industrial accident board, here referred to, are now lodged in the workmen's compensation commission. See CL 1948, § 408.6 (Stat Ann 1950 Rev § 17.6 [6]).— REPORTER.

and under the statute, a dependent member of his family at the time of his death."

It is evident that to some extent decision affirming the award was based upon the fact that there was a blood relationship between the parties and a lack of sordid motives as well as a continuation of such support for a period of 27 years. In the case at bar there was no blood relationship and no negation of a sordid motive. There appears to be 2 lines of authority upon the particular issues involved in the case at bar. In one line of case the courts hold that it makes no difference whether the workmen's earnings are being distributed to those whose support he had voluntarily assumed, or to those who are legally entitled to such support. See *Moore Shipbuilding Corp.* v. *Industrial Accident Commission,* 185 Cal 200 (196 P 257, 13 ALR 676) ; *Utah Fuel Co.* v. *Industrial Commission of Utah,* 63 Utah 328 (230 P 681) ; and *L. E. Myers Co.* v. *Noland,* 222 Ky 748 (2 SW2d 387).

Another line of authority holds to the contrary. The case of *Armstrong* v. *Industrial Commission of Wisconsin,* 161 Wis 530 (154 NW 844), holds that it is against public policy to grant compensation to a woman who lived with deceased as husband and wife. The court in construing a statute similar to ours said:

"What we hold is that living with a man as his wife, where there is no marriage, does not create a family relation within the meaning of the statute. We think it was intended to cover legitimate, and not illicit ties."

In *Moore's Case,* 294 Mass 557 (3 NE2d 5), it was said:

"It has been recognized, however, that, even if there is no legal obligation on an employee to support persons, the voluntary assumption by him on a

ground favored by the law, of an obligation to support them is an element to be considered in determining whether such persons are members of his family. * * * But it cannot be said that the assumption by an employee of the support of children, not his own, of a woman with whom he lives in illicit relations, tending to facilitate such relations, is based on a ground favored by the law."

See, also, *Welsh* v. *Industrial Commission of Ohio,* 136 Ohio St 387 (26 NE2d 198).

We are of the opinion that in order to create a family relationship there must exist a condition devoid of moral turpitude. In the case at bar, the responsibility for the support of the 2 children rests upon their mother and father. Deceased had no such obligation. The tie that bound the children to deceased was the illicit relationship between their mother and deceased. Public policy does not sanction the payment of compensation arising out of meretricious cohabitation. We hold that plaintiffs were not members of deceased's family within the meaning of the compensation act.

The award granting compensation is set aside and vacated, with costs to appellants.

ADAMS, C. J., and DETHMERS, BUTZEL, CARR, BUSH-NELL, BOYLES, and REID, JJ., concurred.