MAMIE DAWSON, WIDOW OF WILLIE DAWSON, DECEASED, PETITIONER-APPELLANT, v. HATFIELD WIRE & CABLE CO., RESPONDENT-APPELLEE.

Argued April 27, 1971—Decided July 26, 1971.

*Mr. Jack Mandell* argued the cause for petitioner (*Messrs. Balk, Jacobs, Goldberger & Mandell,* attorneys; *Mr. Mandell* of counsel and on the brief).

*Mr. George J. Kenny* argued the cause for respondent (*Messrs. Hughes, McElroy, Connell, Foley and Geiser,* attorneys; *Mr. Kenny* of counsel and on the brief).

The opinion of the court was delivered by

MOUNTAIN, J. Appellant, Mamie Dawson, filed a petition in the Division of Workmen's Compensation claiming de-

pendency benefits as a result of the death of her husband, Willie Dawson, on August 25, 1965. It is conceded that death occurred as the result of an "accident arising out of and in the course of his employment," *N. J. S. A.* 34:15–7, and that the only issue presented is whether the claimant is a "dependent" as that term is defined in *N. J. S. A.* 34:15–13(f). This statute enumerates as dependents various classes of persons standing in certain relationships to decedent. One such relationship is that of wife, as to whom dependency is conclusively presumed. Respondent has taken the position that the claimant did not enjoy the status of a wife at the time of Willie Dawson's death and that she cannot therefore claim benefits for which the statute makes provision.

On February 14, 1949, claimant and decedent were married ceremonially in Elkton, Maryland. Their application for a marriage license indicated that each was single and that neither had been previously married. Both were residing in New Jersey at the time and following their marriage they returned to this state, making their home in Newark. There they continued to reside together as husband and wife until decedent met his death some sixteen years later. No children were born of the marriage.

At the hearing before the Judge of Compensation, respondent produced as its witness, Nellie Mae Dawson. She testified that her maiden name had been Nellie Mae Respess; that she married Willie Dawson on September 20, 1942; that she had not previously been married and that when they applied for their marriage license, Willie had stated that he, also, had not been previously married. Two children were born of this union, both of whom are now adults and emancipated. Shortly after the marriage, Willie entered the military service, while Nellie Mae continued to reside in Atlanta, Georgia, where both parties had been living and where the marriage ceremony had been performed. Upon leaving military service, Willie returned to Georgia very briefly and then went to Newark ostensibly to buy a home. Thereafter

he made several trips to Atlanta but never stayed longer than a week, apparently returning to New Jersey after each visit. At about this point, he seems to have drifted out of Nellie Mae's life. She has since had two additional children by another man. According to her testimony, she never divorced Willie and to the best of her knowledge he never divorced her.

Respondent introduced in evidence the certificate with respect to the marriage of Willie and Nellie Mae in 1942. The application attached to the certificate disclosed no previous marriage by either party. There was also introduced a certificate of the Clerk of the Superior Court, Fulton County, Georgia, certifying that a search of the records of that office between July 1, 1940 and 1967 failed to disclose any suit for divorce filed in Fulton County between Willie Dawson and Nellie Mae Respess Dawson. Finally, there was admitted in evidence a certificate of the Clerk of the Superior Court of New Jersey, Chancery Division, revealing a similar dearth of any record of a divorce proceeding between the parties in this State during the appropriate period.

The Judge of Compensation entered a dependency award in favor of Mamie.

On appeal to the County Court the decision was reversed. The court noted the strong presumption that the latest of two or more ceremonial marriages having a common participant is valid. It pointed out that one attacking such a marriage must show by clear and convincing proof (1) that a prior marriage upon which he relies has not been terminated by death or divorce before the more recent marriage was celebrated, and (2) that at the time of the earlier marriage the parties thereto had been under no disability preventing their entering into that union. Such is clearly the law of this State. *Booker v. James Spence Iron Foundry,* 80 *N. J. Super.* 68, 73 (App. Div. 1963). The court determined that the evidence before it met the required

standards of proof as to each of these points and that accordingly the respondent should prevail.

The Appellate Division, on review, agreed with the County Court that the proofs were adequate to establish that the earlier marriage, that between Willie and Nellie Mae, had not been terminated by death or divorce; it disagreed, however, as to the second point mentioned above, and remanded the cause, while retaining jurisdiction, for further proofs and additional findings upon the issue as to whether either Willie or Nellie Mae had been under any disability at the time of their marriage in 1942.

At the hearing on remand, respondent placed in evidence certificates from officials of 111 counties in the State of Georgia[1] certifying in each case that their records revealed no marriage by either Willie Dawson or Nellie Mae Respess prior to the date of their marriage to one another in 1942. Petitioner, Mamie Dawson, introduced evidence to support an earlier common law marriage between Willie and a woman known only as Elizabeth. The County Court found this evidence inadequate to establish this earlier marriage and accepted respondent's proofs as being sufficient to negate any disability on the part of either Willie or Nellie Mae to marry one another in 1942. The case was returned to the Appellate Division which accepted these findings and affirmed the judgment for respondent. We granted certification. 57 N. J. 236 (1970).

In the Appellate Division, following remand, appellant sought leave to enlarge her proofs with respect to Willie's alleged common law marriage to Elizabeth. The court refused to permit this, noting that she had had a full opportunity to present evidence before the County Court at the two-day hearing after remand, and that "litigation must come to an end." We entirely concur.

---

[1] We take judicial notice of the fact that there are 159 counties in the State of Georgia.

This brings us to the meritorious issue which this case presents: Under the facts as they have been developed, should the judgment in favor of respondent be affirmed?

Initially it must be noted that petitioner, Mamie Dawson, entered upon her relationship with Willie in entire good faith. There is no evidence in the record to suggest that she had any suspicion, let alone knowledge, that Willie had ever been previously married. Her *bona fides* is unquestioned. In upholding awards under similar circumstances, courts in other states have placed strong reliance upon the good faith of a claimant when her legal relationship to the deceased employee has been questioned. *Eason v. Alexander Shipyards, Inc.*, 47 *So.* 2d 114 (La. App. 1950); *Perry v. Sun Coal Co.*, 183 *Tenn.* 141, 191 *S. W.* 2d 181 (1945); *Nall v. Wakenva Coal Co.*, 236 *Ky.* 598, 33 *S. W.* 2d 631 (1930). In each case the reasonable and honest belief of the petitioner as to the validity of her marriage was strongly emphasized by the court as a reason for affirming the particular award. Conversely, a knowingly meretricious relationship has generally been held sufficient to defeat recovery. *Insurance Company of North America v. Jewel*, 118 *Ga. App.* 599, 164 *S. E.* 2d 846 (1968); *Fields v. Hollowell & Hollowell*, 238 *N. C.* 614, 78 *S. E.* 2d 740 (1953); *McDonald v. Kelly Coal Co.*, 335 *Mich.* 325, 55 *N. W.* 2d 851 (1952); *Day v. Day*, 216 *S. C.* 334, 58 *S. E.* 2d 83 (1950); *Hatfield Campbell-Creek Coal Co. v. Adams*, 275 *Ky.* 744, 122 *S. W.* 2d 787 (1938).

Furthermore, from the time of their marriage in 1949 until her husband's death in 1965, Mamie and Willie lived together as husband and wife. For upwards of sixteen years this relationship continued, open and apparent. It was unquestioned and unchallenged during Willie's lifetime. The challenge came only after Willie's death and then not from the quarter from which it might have been expected—the decedent's first wife, Nellie Mae—but rather from respondent, who seeks to be relieved of all obligation to pay. For here there is no second claimant. Nellie Mae appeared

as a witness for respondent, but presses no claim in her own right. The time within which such claim might have been advanced has long since expired, *N. J. S. A.* 34:15–51, and Nellie Mae did not at any earlier date evince a desire to assert such a claim.

That Mamie was in fact dependent upon the decedent for economic support has not been controverted.

Finally, we deem it significant that petitioner and decedent entered upon a *ceremonial* marriage, carrying with it, as all ceremonial marriages do in varying degree, elements of solemnity, publicity and prior deliberation not generally characteristic of a common law union.

■ Thus, we have here, entire good faith on the part of petitioner, a *de facto* relationship of man and wife continuing unbroken over an extended period of years having had its genesis in a ceremonial marriage, economic dependence on the part of petitioner and the total absence of any other claim against respondent. Where such facts coalesce, we think that the petitioner qualifies as a "wife" under the statute. We leave for another day the question as to who should recover benefits in the event of a dispute between the wife of a first marriage and the wife of a purported second marriage. This issue is not before us.

■ Workmen's compensation legislation seeks to place upon industry the burden of bearing the loss inevitably resulting from accidents arising out of the business employment relationship. *Petrozzino v. Monroe Calculating Mach. Co., Inc.,* 47 *N. J.* 577, 579–580 (1966); *Stellmah v. Hunterdon Coop. G. L. F. Serv., Inc.,* 47 *N. J.* 163, 169–170 (1966); *Howard v. Harwood's Restaurant Co.,* 25 *N. J.* 72, 88 (1957); *Gargiulo v. Gargiulo,* 13 *N. J.* 8, 13 (1953); 1 *Larson, Workmen's Compensation,* § 2.20, p. 5–9. One such loss is occasioned by the work-connected death of an employee upon whom a wife—or one living in such a relationship—has been economically dependent. *N. J. S. A.* 34:15–13; *Roberts v. All American Engineering Co.,* 104 *N. J. Super.* 1, 7 (App. Div. 1968). If, in many cases at least,

she is not to become a public charge, the benefits of this legislation must be made available to her. We seek, to the greatest extent possible, to further the legislative objective, and "we must be mindful that it is remedial social legislation we are interpreting and that all the precedents call for liberal construction in order that its beneficent purposes may be accomplished." *Engelbretson v. American Stores,* 49 *N. J. Super.* 19, 25 (App. Div. 1957) (per Francis, J.), aff'd 26 *N. J.* 106 (1958). See also *Close v. Kordulak,* 44 *N. J.* 589, 604 (1965); *Ciuba v. Irvington Varnish & Insulator Co.,* 27 *N. J.* 127, 138 (1958); *Silagy v. State,* 105 *N. J. Super.* 507, 510 (App. Div.), certif. den. 54 *N. J.* 506 (1969); *Hannigan v. Goldfarb,* 53 *N. J. Super.* 190, 195 (App. Div. 1958). We are in complete agreement with Judge Gaulkin's statement in *Hannigan* that "Our act is construed to bring as many cases as possible within its coverage * * *." So viewed, petitioner's claim to qualify as a "wife" merits a most sympathetic consideration. She thought she was a wife; she fulfilled the role of wife; decedent treated her as his wife. She is now a dependent "widow," one of that class of persons whom the Legislature sought to aid. Her needs are the same, and have arisen in the same way, as would have been the case had decedent never entered upon an earlier marriage. The purpose of the statute will obviously be advanced by recognizing petitioner as coming within the favor of this remedial legislation. The test of the relationship of husband and wife should not be quite the same in the context of this type of law, designed to supply a social need and to remedy a social evil, as in the area of familial law where questions of property, inheritance, legitimacy of offspring and the like rightly demand a more rigid adherence to conventional doctrine. See *Davis, Dependency in Workmen's Compensation: Letting the Expectations and Conduct of Affected Parties Play a More Significant Role,* 23 *Vand. L. Rev.* 23 (1969); 2 *Larson, Workmen's Compensation,* § 62.21, p. 92 *et seq.*

Where, as here, petitioner reasonably and sincerely believed herself to have been the decedent's wife, where she had lived with him in every way as his wife over a period of years following a ceremonial marriage, where she had become economically dependent upon him and where no other person appears to challenge her claim, we hold that she has established a right to be considered a dependent within the sense and meaning of the statute—a right which readily withstands the impact of respondent's proofs and argument.

The judgments of the Appellate Division and of the County Court are reversed and the judgment of the Division of Workmen's Compensation is reinstated.

WEINTRAUB, C. J. (concurring). I agree with the result reached in the majority opinion but I would rest it upon another ground.

The Workmen's Compensation Act is concerned with hard realities. One is the plight of the dependents of an employee whose death is compensable. The design of the statute is to replace the decedent's obligation, cut short by the compensable event, with the obligation of the employer to pay the statutory sums. We should not assume the Legislature intended to permit the employer to dispute a legal relationship the employee intentionally assumed and which the employee might well be estopped to question if he had lived and been minded so to do. See *Tonti v. Chadwick,* 1 *N. J.* 531, 537 (1949); *Danes v. Smith,* 30 *N. J. Super.* 292, 297 (App. Div. 1954). Here the deceased married the petitioner on a representation that he was free to do so. The marriage was a ceremonial one, celebrated in 1949, and the deceased lived with his wife until his death 16 years later. I would not permit the employer to challenge that relationship.

The statute speaks of a "wife" and I assume for present purposes that a *de jure* wife was intended. Nonetheless, upon that hypothesis, the reasonable objective would be to protect the employer from spurious claims that the em-

ployee had a duty to provide for an alleged wife. But I would not assume that the Legislature, in requiring a *de jure* relationship, intended thereby to enable the employer to rummage through the lives of the employee and the widow in search of some basis to challenge their ceremonial marriage. The law zealously guards a ceremonial marriage by surrounding it with a heavy presumption of legality. That solicitude repels the notion that strangers to the marriage should be permitted to attack it. An employer is not a party in interest in a marital relationship. To the employer the marital status of an employee is merely a fortuitous fact. The employer is no more entitled to question the legality of a ceremonial marriage than he would be to challenge the paternity of a child born during the employee's marriage, or the validity of a divorce the employee or his wife had obtained prior to their marriage. See *Weinberg v. Todd Shipyards*, 97 *N. J. Super.* 289, 293 (App. Div. 1967). These matters do not become the employer's proper concern merely because he could escape a dollar liability if he had standing to mount an attack.

The employer, of course, should be protected against multiple claims of widow dependency. The employer is liable to one widow and no more. As in any other case in which an obligor is not sure who of several is entitled to collect, the employer may resort to a proceeding in the nature of an interpleader in which the employer is a stakeholder and the contestants litigate their respective claims. To that end, an employer who seeks protection against multiple claims may implead the other potential claimant in the compensation proceeding if feasible and otherwise in an appropriate action in a judicial tribunal. But that is not the relief this employer seeks. Rather this employer wants to avoid payment to either woman by attacking a ceremonial marriage of the only one who presses a claim for dependency compensation. In my view, the employer lacks the necessary standing. Public policy dictates that answer.

FRANCIS, J. (concurring and dissenting in part). I agree with the result announced by my colleagues but I cannot accept the basis upon which it was reached. The opinion accepts the fact that Dawson had a living lawful wife at the time he entered into the ceremonial marriage with the petitioner. Although the second marriage was therefore void, the majority characterize the relationship of petitioner and Willie Dawson as a *de facto* relationship of husband and wife, and they regard petitioner's status as that of a *de facto* wife. Thus there comes into existence a *quasi*-marital status which was hitherto unknown to, and in fact contrary to, the law of our State, and which is to be employed in the administration of death benefits under the Workmen's Compensation Act. As I see the legislative intention under that act and under the public policy revealed by our marriage laws, a woman is either a *legal* wife or she is not a wife. Unless the parties are competent to marry and actually comply with the statutory ceremonial prerequisites, they do not become husband and wife regardless of the good faith attending their assumption of the relationship. To illustrate, no matter how fervently and sincerely a man and a woman agree to become husband and wife and to live together as such, in New Jersey they never acquire that status legally regardless of the length of time they live together. The Legislature has condemned common law marriage as "absolutely void." *N. J. S. A.* 37:1–10.

But in spite of our strong public policy, the majority hold that a void ceremonial marriage entered into in good faith by a woman, coupled with a period of cohabitation as man and wife and support of the woman by the man, gives her the status of a lawful wife for purposes of workmen's compensation. I believe that such a doctrine is contrary to the intention of the Legislature and the express language of the Workmen's Compensation Act. Furthermore, adoption of such a drastic change in the law is not at all necessary in this case, as the respondent has failed to prove the invalidity of petitioner's ceremonial marriage to decedent.

## I

In order to receive benefits in a workmen's compensation death case, the statute imposes on the petitioner the burden of proving by a fair preponderance of the evidence that she occupied the status of a dependent wife, as described therein, at the time of the accident or the employee's death. *N. J. S. A.* 34: 15–13 says that "dependents" shall apply to and include a wife and her dependency "shall be conclusively presumed" if she is "actually a part of the decedent's household at the time of his death." Ordinarily a woman becomes a wife when she is lawfully married to a man within the requirements of the place where the status was assumed. Undoubtedly that is the type of relationship the Legislature contemplated when using the terms "wife" and "widow." In my judgment there was no intention to provide benefits for a *"de facto* wife." So when a person, claiming to be a wife turned widow on the death of an employee, files a petition for compensation benefits, she must in her case produce at least *prima facie* evidence of that status. If the employer is possessed of facts demonstrating the contrary, he may deny the relationship in his answer to the petition and introduce the supporting proof at the hearing. Obviously the obligation of the employer under the statute is to pay benefits to the decedent's wife-widow, not to a woman who happens to be living with him at the time of his death.

In view of the statutory burden on the alleged wife to prove her status, the right of the employer to contest the claim exists, whether he is a self-insurer or whether he carries the otherwise compulsory insurance coverage required by *N. J. S. A.* 34:15–70 *et seq.,* under which the carrier's obligation is to satisfy the employer's compensation act liability. The qualifications for compensation have been fixed by the Legislature and it is not within the province of the judiciary to extend or enlarge them beyond the statute. *Jones v. New Jersey Manufacturers Cas. Ins. Co.,* 77 *N. J. Super.* 147, 152 (App. Div. 1962), *aff'd o. b.* 39 *N. J.* 555

(1963) ; *Flynn v. Union City,* 32 *N. J. Super.* 518, 524 (App. Div. 1954), *certif. den.* 17 *N. J.* 253 (1955) ; *Fedi v. Ryan,* 118 *N. J. L.* 516, 520 (Sup. Ct. 1937). As this Court has indicated plainly, "dependents" in such cases are to be determined by finding that the person claiming benefits is not only an actual dependent of the deceased worker but also that she bears to him "one of the specified statutory enumerated relationships." *Stellmah v. Hunterdon Coop. G. L. F. Serv. Inc.,* 47 *N. J.* 163, 170 (1966) ; see *Gaudreau v. Eclipse Pioneer Div. of Bendix Air Corp.,* 137 *N. J. L.* 666, 668 (E. & A. 1948).

Since the inception of the Workmen's Compensation Act the Workmen's Compensation Division has recognized the right of the employer to deny and to disprove the alleged status of a petitioner as the lawful wife of a decedent. See *e. g. Foster v. Jarka Corp.,* 21 *N. J. Misc.* 47, 30 *A.* 2d 47 (Dept. of Labor 1942) ; *Dunn v. O'Day,* 18 *N. J. Misc.* 679, 16 *A.* 2d 195 (Dept. of Labor 1940) ; *Monroe v. Kantor,* 10 *N. J. Misc.* 942, 161 *A.* 833 (Dept. of Labor 1932). So too have the courts: *Booker v. James Spence Iron Foundry,* 80 *N. J. Super.* 68 (App. Div. 1963) ; see *Minter v. Bendix Aviation Corp.,* 24 *N. J.* 128 (1957) where two petitioners in individual petitions, each claiming to be the widow of the deceased workman, at separate hearings obtained awards of compensation. On appeal this Court vacated both awards, ordered consolidation of the petitions and remanded for a rehearing to determine the true widow; and *cf. Weinberg v. Todd Shipyards,* 97 *N. J. Super.* 289 (App. Div.), *certif. den.* 51 *N. J.* 9 (1967) ; *Shuler v. Eastern Foundry,* 34 *N. J. Super.* 216 (Cty. Ct. 1955). Administration of the compensation act is accomplished essentially by adversary proceedings between the employee and employer. That appears to be the plan of the Legislature and proceedings of that character provide the best means of effectuating the lawmakers' purpose of providing benefits for those persons who meet the criteria therefor which are specified in the act. Allowing the employer to question or to deny a petitioner's status

as the workman's widow may not be a perfect solution in all cases, but in the great mass of cases it is bound to further the quest for a just result. If an employer proves that decedent had another living and lawful wife, we must rely upon the judge of compensation to require the employer to bring the other person into the proceeding or to have her brought in on the Division's own motion. In that way the probability is that the true wife will be paid the statutory benefits. From a practical standpoint, if an employer has knowledge of another living wife, even if the petitioner — alleged wife — was married in a ceremonial marriage, and if he is faced with the possibility of double liability, it seems likely that he or the hearing judge will see to it that the Division is given the opportunity to decide which person is the lawful wife. If, in the face of a ceremonial marriage between the decedent and the alleged widow-petitioner, the employer simply undertakes to prove that the workman was already married when she married him, and the employer does not produce the alleged first wife, or if the proof indicated that the first alleged wife is dead, petitioner's right to compensation benefits would be tested and probably resolved by application of the strong presumption (to be discussed hereafter) in favor of validity of the second ceremonial marriage. If on the other hand the employer is not allowed to question the validity of petitioner's claim that she is the workman's widow unless it appears that another allegedly true widow is also making a claim, a true widow may never know that she is entitled to compensation benefits.

It does not follow that because an employee might be estopped in a matrimonial proceeding between himself and his wife to question the validity of their marriage, the employer should likewise be estopped from doing so in a statutory workmen's compensation proceeding. The right of an alleged widow to death benefits was created by and depends entirely upon the conditions precedent to the existence of that right as specified by the Legislature. That body has ordained that if a workman dies in a work-connected acci-

dent, leaving a lawful widow, the employer shall pay certain benefits to her. Thus the measure of the employer's obligation is the existence of a woman who qualifies under the law as a wife-widow. Therefore subject to the strict proof requirements hereafter outlined, the employer should not be denied the right to show that petitioner did not hold that legal status at the time of his employee's death.

For the reasons stated, I believe (1) that the Legislature has imposed upon an alleged widow the burden of proving by the preponderance of the evidence that she was the legal wife of the deceased workman at the time of his death, and (2) that the employer may contest her claim to that status, although in the face of a ceremonial marriage between petitioner and decedent, his burden would be a very heavy one.[1]

## II

The above brings me to the uncomplicated and, I think, sound basis on which this case should be decided.

As the majority opinion notes, petitioner and decedent were ceremonially married on February 14, 1949 and lived together in New Jersey until Willie Dawson died 16 years later.

Respondent proved that on September 20, 1942 Dawson had entered into a ceremonial marriage with Nellie Mae Respess in Atlanta, Fulton County, Georgia. Less than a year later Dawson entered military service. Upon his discharge he visited Georgia briefly and then went to Newark, New Jersey, allegedly to buy a home. Thereafter he made several short trips to Georgia, returning to Newark after each visit. Then, as the majority opinion records, "he seems to have drifted out of Nellie Mae's life." Subsequently she had two children by another man, but she never divorced

---

[1]This does not mean that the employer should be allowed to make a collateral attack on a divorce decree between decedent and his first wife. On that subject the view of the Appellate Division in *Weinberg v. Todd Shipyards, supra,* 97 *N. J. Super.* at 293 is eminently sound.

Willie, and to the best of her knowledge he never divorced her.

Respondent offered proof that there is no record showing the grant of a divorce to Nellie Mae or to Dawson in Fulton County, Georgia, between 1940 and 1967; also that there is no record of such a divorce in New Jersey during that period. It should be noted that there are 159 counties in Georgia and that Nellie Mae lived for some time in Macon County in that state. Moreover the record does not show the state or states to which Dawson was assigned while in military service.

The law has a tender regard for a second ceremonial marriage. A strong presumption of its validity exists; in fact it is regarded as one of the strongest presumptions in the law. It is based upon considerations of social and public policy, principles of morality, and a further presumption against the wilful commission of bigamy. It is regarded as outweighing the presumption of continuance of a prior marriage and as deriving additional support from a presumption that the first marriage was terminated by divorce. Further, its probative force increases as the years of cohabitation lengthen. Annotation, "Presumption as to validity of second marriage," 14 *A. L. R.* 2d 7 (1950).

In describing the potency of the presumption of validity, courts have said that it can be overcome only by "overwhelming proof to the contrary"; it may be negated only by disproving every reasonable possibility which could vitiate the prior marriage relationship. Clear, cogent and convincing evidence is required; there must be plenary proof that neither party to the previous marriage had obtained a divorce in any of the counties of a jurisdiction where it could have been granted; the evidence to overcome must be clear, strong and satisfactory and so persuasive as to leave no room for reasonable doubt that a divorce was not obtained; the evidence must be sufficient to establish a mental conviction which amounts to a moral certainty; the presumption must prevail until rebutted by evidence which negatives the effective operation of every possible means by which a dis-

solution of the prior marriage could have taken place. *Yarbrough v. United States,* 341 *F.* 2d 621, 169 Ct. Cl. 589 (1965); *Mims v. Hardware Mutual Casualty Co.,* 82 *Ga. App.* 210, 60 *S. E.* 2d 501 (Ct. App. 1950); *Harper v. Dupree,* 185 *Kan.* 483, 345 *P.* 2d 644 (1959); *Browning v. Browning,* 224 *Md.* 399, 168 *A.* 2d 506 (1961); *Esmond v. Thomas Lyons Bar & Grill,* 26 A. D. 2d 884, 274 *N. Y. S.* 2d 225 (1966); *Marcum v. Zaring,* 406 *P.* 2d 970 (Okla. Sup. Ct. 1965); *Texas Employers' Insurance Assn. v. Elder,* 155 *Tex.* 27, 282 *S. W.* 2d 371 (1955).

In our own State, the presumption of validity of the second marriage is no less strong, nor is the burden of overcoming it any less burdensome. *Booker v. James Spence Iron Foundry, supra,* 80 *N. J. Super.* at 73–74, and cases cited therein; *Tyll v. Keller,* 94 *N. J. Eq.* 426, 428 (E. & A. 1922); *DiFranco v. DiFranco,* 103 *N. J. Eq.* 529 (Ch. Div. 1928); *Rehder v. Rehder,* 13 *N. J. Misc.* 310, 178 *A.* 361 (Juv. & Dom. Rel. Ct. 1925). In *Booker,* a workmen's compensation death claim where the respondent contested petitioner's right to benefits on the ground that she was already married at the time her ceremonial marriage to decedent was performed, and offered considerable proof in support of its position, the Appellate Division, finding it inadequate to overcome the presumption of validity of the workman's marriage to petitioner, soundly said:

It is well settled that there is a strong presumption that the latest of two or more marriages involving a common participant is presumed valid when the validity of that marriage is in issue in a legal proceeding and that the presumption is that the prior marriage has been terminated by death or divorce before the contracting of the marriage in issue. Evidence variously described as "clear and conclusive," [citing cases], and, more recently, as "clear and convincing," is required to overcome these presumptions as to the termination of the prior marriage. * * * The presumption in favor of the validity of the last marriage is so strong, moreover, that when the opponent thereof submits a prior marriage of one of the parties it is his affirmative obligation to show that the parties to the prior marriage were at that time free from disabilities against a lawful marriage. * * * These presumptions in favor of the latest marriage are entertained in almost all jurisdictions. * * * 80 *N. J. Super.* at 73–74.

When the evidence offered by respondent here is weighed, in my judgment, it is not sufficient to overcome the strong presumption of validity of petitioner's marriage to Dawson. Although the proof is adequate to show that Dawson never obtained a divorce in New Jersey, it is not so clear and convincing that a dissolution of his first marriage did not occur elsewhere. For example, the evidence shows only that no divorce judgment was entered in Fulton County, Georgia, although (as we notice judicially) there are two counties in Atlanta—Fulton and DeKalb Counties. Furthermore Nellie Mae testified that after Dawson went into service she went to live with her mother in Macon County, Georgia, and apparently was there when he was discharged from service. The Veterans' Administration record reveals that when Dawson was inducted into service, he said he and his wife were separated. It is entirely possible that he learned of her residence with her mother in Macon County, and sued for and obtained a divorce there. The possibility was not disproved by the record of that County, and it may well be that for some reason she did not receive the suit papers there or she would not admit she received them. It is interesting to note that at one point, apparently long before Dawson's death, Nellie Mae said that she telephoned him in Newark and that a woman answered who identified herself as Dawson's wife. She seems to have accepted the fact, because although she was not being supported by Dawson, she made no effort to vindicate her right to support, or to bring a proceeding, either civil or criminal, against him when he visited his relatives in Georgia. No effort was made to prove where Dawson served his military duty or that he did not obtain a divorce in a state where he was stationed. It is a matter of common knowledge that servicemen had the benefit of liberal legal aid during their tour of duty. In view of the social policy supporting the presumption of validity of his later marriage to petitioner, it does not seem unreasonable to regard respondent's failure to pursue that line of investigation as militating against a conclusion that the presumption

has been overcome. Moreover, and of extreme significance to me in view of petitioner's ceremonial marriage, her good faith entry into it and her performance as a wife for 16 years before Dawson died, we cannot overlook the fact that Dawson is dead. His lips are sealed and he seems to have been the one person who could tell us with certainty whether he had divorced his first wife. If Nellie Mae had made the necessary inquiry and investigation after she had been informed, apparently by the present petitioner, that she was his wife, proof positive might have become available. Nellie Mae had two children by Dawson. After he went to New Jersey he obviously provided no support for them. So she had a strong motivation to seek support, if only for her children; yet she did nothing over the years. This can mean that she knew he had divorced her, but even if that is not regarded a strong inference, nevertheless her inaction does not weaken the force of the presumption of divorce, or of the more potent presumption of validity of Dawson's ceremonial marriage to petitioner.

Under all the circumstances, I feel that petitioner has sustained the burden of establishing that she is the widow of decedent within the contemplation of the Workmen's Compensation Act, and therefore she should receive an award of compensation.

WEINTRAUB and FRANCIS, JJ., concur in result.

FRANCIS, J. dissents in part.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.