# Black Mountain Corporation v. Cobb et al.

(Decided Oct. 11, 1935.)

B. M. LEE for appellant.

G. G. RAWLINGS and J. O. BAKER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to and on August 29, 1932, Robert Cobb was an employee in the coal mines of appellant and plaintiff below, Black Mountain Corporation, located in Harlan county. On that day he was killed by accidental means which arose "out of and in the course of his employment." Both he and his employer were operating under our Workmen's Compensation Statute (Ky. Stats. sec. 4880 et seq.), and the appellee and defendant below Fannie Cobb, as his alleged widow, and as a dependent upon him, together with an infant child and grandchild of the deceased, later made application for an award under the compensation statute, and the board, after a full hearing, sustained the application and rendered an award within the provisions of the statute to the applicants in proportion to their dependency upon the deceased. Plaintiff herein by pursuing the statutory course, applied to the Harlan

circuit court for a review of the award upon the same two grounds that were employed in resisting the award before the board, and which were: (1) That the appellee Fannie Cobb was not the legal widow of the deceased, inasmuch as they were never legally married, and that their relations as man and wife, which were assumed in 1912, were illegal and immoral, and so known to be by her, and that her continuing to live and cohabit with the deceased was not in good faith or under the bona fide belief on her part that she was legally married to her alleged husband; and (2) that while the infant appellants were dependents upon the deceased, the board allowed them a greater sum than they were entitled to under the evidence, although within the maximum limitations of the statute. In other words it was claimed by appellant that the amount of dependency of the infant child and grandchild of deceased, as shown by the testimony, did not justify the award rendered in their favor.

The board disallowed both defenses, and the Harlan circuit court, on final submission of the review petition to it, affirmed the findings of the board in toto, followed by this appeal of appellant to this court. Only a skeleton statement of the proven facts is required, as we conclude, for an understanding of the issues, and in substantiation of the conclusions we have reached.

The deceased was a colored minister and was married about the year 1900 to a colored woman named Zona in Scottsboro, Ala., where they both resided. They lived together in that city for some eight or nine years and then moved to Lafollette, Tenn., where the appellee Fannie resided and at which place she became acquainted with the deceased and his wife. In 1911 the deceased left Zona and moved from Lafollette, Tenn., into Kentucky where he engaged in several kinds of work at various places and finally located in Lynch, Ky., after that town was founded in 1916. He continued to carry on his ministerial duties, and at the time of and prior to his death he had charge of a church in Lynch, but he worked in the mines of appellant during week days. Before the departure of the deceased from Lafollette, Tenn., for Kentucky his first wife, Zona, together with two infant children that had been born to the couple, returned to Scottsboro, Ala. One of them arrived at adult age and became married

and later died leaving the other infant dependent to whom its proportionate part of the award was made.

The status of the parties as so described continued until in May, 1922, when Zona applied to the proper court in her state for a divorce from the deceased, which was granted on May 13 of that year, but the appellee Fannie had married him in 1912 and was living with him as his wife in Kentucky, and which she continued to do thereafter until his death. Some time in 1922 the congregation being served by the deceased, because of faint rumors afloat, became suspicious as to the legality of the relationship between the deceased and Fannie; whereupon he went to Scottsboro, Ala., and after his return produced to his congregation this paper bearing date May 31, 1922: "To whom it May concern. This is to certify that Robert Cobb has legally divorce from Zonnie Cobb and is here by set free. His first bill was call April 12, 1911 and was granted and sworn to at my office. Scottsboro, Alabama. B. F. Shook, esq." It seems to have satisfied the flock for which the deceased was shepherd and the agitation became permanently allayed. There was also introduced at the hearing before the board, and also at the hearing in the Harlan circuit court, a purported marriage certificate of the deceased and appellee Fannie, who was then known as Fannie Harris, which certificate was and is of record in the county clerk's office of Bell county and in which J. E. Larue, a minister of the gospel, certifies that he united the two in holy wedlock on May 10, 1912, in the presence of named witnesses. However, a search of the county court records of Bell county failed to disclose the issuance of any marriage license authorizing such marriage ceremony, and all of which clearly shows that the documents referred to, even if there existed a duly issued marriage license, were insufficient to prove a valid marriage at the date when the ceremony claims to have been pronounced between deceased and appellee Fannie, since at that time the former had a living wife residing at Scottsboro, Ala., and from whom he had never been divorced. But such documents, though forged, as appellant's counsel vigorously contend, did and do tend to prove the good faith and bona fides of Fannie Cobb, provided she accepted them as true while unaware of their falsity.

There is testimony to show that she did act in good faith and upon the bona fide belief that the deceased at the time of her marriage to him had become divorced from his first wife, Zona, but whether through proceedings instituted by him or his first wife is immaterial. For the purposes of the legal question involved, it is also immaterial (as we have already intimated) whether or not the referred to documents were forgeries (and especially the first one as appellant's counsel argue). If Fannie was unaware of such fact and also unaware of the further fact that the deceased was never divorced from his first wife and in ignorance of both she assumed the relationship of wife to him, if she assumed such relationship and continued thereafter under the bona fide belief that· it was lawfully done, then under the rule promulgated and approved by us in the cases of Nall v. Wakenva Coal Co., 236 Ky. 598, 33 S. W. (2d) 631, and Franklin Fluorspar Co. v. Bell, 247 Ky. 507, 57 S. W. (2d) 481, she was and is entitled to compensation to be measured by the extent of her dependency upon the one with whom she occupied that relation. Learned counsel for appellant does not contend to the contrary, nor does he dispute the amount of compensation awarded to Fannie. But he vigorously argues that she should receive no award whatever because of his contention that she did not bring herself within the domain of the rule approved in the two cases referred to, i. e., that at the time she became the ostensible wife of the deceased and assumed such relations with him she knew that he had a living wife and from whom he was not divorced.

The contention is largely ˙and chiefly based upon the testimony of a colored woman whose name is Jessie Cullens, who was about nine or ten years old in 1911 at the time deceased left Lafollette, Tenn. She testified that she saw him and the appellee Fannie depart from that place at the same time and on the same train with the statement that they were going to Lynch, Ky., and become married. There was considerable testimony introduced before the board impeaching the reputation of that witness for truth and veracity and morality, but it related to a period so remote from the time she testified in this case that exceptions were filed to it, which were sustained, and her reputation for truth and morality stands unimpeached because

of such exclusion. We are inclined to the opinion that such testimony was properly excluded because it related to a time too remote from the date of the giving of her testimony in this case; but, nevertheless, her testimony was denied by some of that introduced in favor of the claimant. It furthermore bears inherent evidence of uncertainty, two of which inherent impeaching facts are, that Jessie Cullens testified that Fannie told her, when she left Lafollette with deceased in 1911, that they were going to Lynch, Ky., when the undisputed fact is that Lynch was not started or the town begun to be built until 1916—the very site of which was a mountain wilderness in 1911 and continued to be so for five years thereafter. The other impeaching fact is that other witnesses testified to Fannie's departure from Lafollette, Tenn., at an entirely different time and, of course, on a different train than with the deceased, and that when she left that place she did so with the declared intention and purpose of going to Knoxville, Tenn., which she did. We, therefore, have a case where the board, or a jury impaneled in a court action, could have found from the testimony adduced the issue of the good faith of Fannie at the time she became the ostensible wife of the deceased either the one way or the other, and we have uniformly held in construing our workmen's compensation statute that if there was any legal evidence supporting the finding of fact by the Compensation Board, courts would not disturb its award on a review for that purpose.

It may be true that the testimony, and deductions to be drawn therefrom, strongly support the conclusion, not only that the relationship between Fannie and the deceased was illicit, but also that she knew it. But the case is not to be determined solely from that viewpoint, since, as we have seen, the board had before it not only Fannie's proof of her good faith at the time she professed to marry the deceased, but it also had the right to and no doubt did consider the inherent contradictions of the testimony of Jessie Cullens, the chief witness, to the contrary, as well as other facts and circumstances fortifying the bona fides of Fannie when she entered into the marriage bonds with deceased as evidenced by the marriage certificate referred to. Under the rule supra, we are not to be governed by the prepon-

derance of testimony on those issues. If the board had any evidence to support its finding, it was the duty of the circuit court, and is the duty of this court on this appeal, to affirm it. There was, as we have seen, some evidence supporting the board's finding and which, under the prevailing rule, cannot be disturbed by the courts. Contention 1, therefore, will have to be and it is denied.

The testimony showed that throughout his life, following the time that the deceased took up his abode in the state of Kentucky, he sent, almost regularly, contributions to his infant children and to his infant grandchild after it was born, perhaps much more than the compensation that the board allowed them. It concluded, as did also the circuit court, that such testimony authorized the amount of compensation allotted to the infant applicants, and we are not convinced that any error was committed in that respect. We deem it unnecessary to further elaborate either this or any other branch of the case, since we are convinced that the conclusions already expressed are fully supported by the record and that the applicable law, as approved in the cases cited, authorized the award rendered by the board, which we as a reviewing court are not permitted to disturb.

Wherefore, for the reasons stated, the judgment is affirmed.