Lela COMBS et al., Appellants,

v.

The ELK HORN COAL CORPORATION et al., Appellees and Cross-Appellant.

Jessie MONTGOMERY, Appellant,

v.

The ELK HORN COAL CORPORATION et al., Appellees and Cross-Appellant.

Court of Appeals of Kentucky.

June 24, 1955.

———◆———

Combs & Combs, Prestonsburg, for appellant Lela Combs.

Kenneth A. Howe, Pikeville, for appellant Jessie Montgomery.

Howard & Francis, Prestonsburg, for appellees and cross-appellant, Elk Horn Coal Corp.

STEWART, Chief Justice.

On August 23, 1951, John Henry Montgomery was killed in an accident while employed by appellee, The Elk Horn Coal Corporation. Jessie Montgomery, with whom he was living at the time of his death, under circumstances hereinafter described, filed an application for compensation shortly thereafter. Subsequently, Lela Combs, to whom he had formerly been married, filed her application, claiming that she alone was entitled to all compensation benefits. We shall refer to the women as "Jessie" and as "Lela." No children are involved in this litigation.

John Henry Montgomery, a Negro, was born in Georgia, the illegitimate son of Sally Stinchcomb and John Glass. We shall refer to the decedent throughout as "John Henry." He came to Wayland in Floyd County in his early manhood and on November 17, 1928, he and Lela were married. Although he had always been known in the community under the name of John Henry Montgomery, he had his name entered on the marriage license as Clifford Combs, so that his wife's name became and is herein called Lela Combs. The legality of this marriage is not in dispute. They lived together as husband and wife until the year 1933 when Lela and John Henry separated and thereafter remained apart from each other. We shall discuss farther along a divorce proceeding instituted by John Henry against Lela when we come to consider whether she abandoned him and thereby forfeited her claim to compensation benefits as his dependent.

Jessie was married to one Jerome Holly on October 20, 1930, in Virginia. After two years they separated and her husband told her he intended to get a divorce. She testified she has neither seen nor heard from him since 1932; she also said she did not know whether he was living or dead. In 1935 she came to Wayland to make her home and, soon after, started courting John Henry. She related that, when he later asked her to marry him, he told her he had been previously married to Lela but he had divorced her in 1935. Relying upon the statement that he was single, Jessie asserts she married John Henry on October 30, 1937. On this occasion the decedent married under the name of John Henry Montgomery. From the time of their marriage until his death, John Henry and Jessie lived together continuously and he was her sole support.

The questions to be decided are whether Lela and Jessie are both entitled to recover compensation benefits on a pro rata basis, or whether one should recover the maximum compensation benefits to the exclusion of the other, or whether neither should recover. The Workmen's Compensation Board awarded equal apportionment of the full sum allowed by law between the two women for the maximum period, or until the intervening termination of dependency, and in the event the dependency of the one should cease, the other should then receive the full remaining weeky payments. The Floyd Circuit Court affirmed the award, and each claimant has appealed, contending she is entitled to the whole amount in controversy. Appellee, The Elk Horn Coal Corporation, has cross-appealed, maintaining the application of each claimant should have been denied.

KRS 342.075(1) (a) provides, so far as pertinent here, that a wife shall be presumed to be dependent upon a deceased employee "whom she had not voluntarily abandoned at the time of the accident". Therefore, the question posed is: Had Lela voluntarily abandoned John Henry at the time of his death? In the light of the evidence adduced we are constrained to answer this question in the affirmative.

In 1933 Lela and John Henry separated and she made this remark in respect to her leaving him: "Now I will tell you when I first left I was angry, yes I was, but since that you know time passes and the

tongue and teeth falls out. We talked it over and made a settlement." She established a new home and she went to work. In fact, she lived in the same community separate and apart from him from 1933 until his death, a period of about 18 years, during which time she was not supported by him and did not ask him for support. She raised no objection when he undertook to marry Jessie and she acquiesced from beginning to end in their living together.

In 1937, after John Henry and Lela had been separated five years, he filed an action against her in the Floyd Circuit Court for divorce, alleging as a ground therefor abandonment for one year. Later, Lela waived service upon her of the summons and the notice to take depositions. This waiver was attested by two witnesses. Thereafter the proof of John Henry was taken, the action was submitted, and a notation was made on the record by the then circuit judge ·to the effect that John Henry was to be granted a divorce *on the basis of abandonment* and judgment was to be entered upon the payment of costs. Apparently the costs were not paid, because an order was entered in 1942 striking the case from the docket for want of prosecution.

We believe the facts we have recited conclusively demonstrate that when John Henry and Lela separated in 1933 this action was undertaken with the intention that the marriage relation between them should no longer exist. At that time they changed their way of life drastically and each charted a new course which each followed without deviation. Neither thereafter sought the society of the other. Lela announced that she would live alone and support herself, which she did. John Henry later established another home with Jessie as his putative wife, and Lela never registered any complaint as to this arrangement.

■ The election to bring the divorce action on the ground of abandonment and Lela's failure to resist it conclusively indicate the·· conviction of mind these people

had at the time the action was brought. Not only this, but the official record clearly shows that the circuit judge who tried the case was convinced that the allegation in the petition was well founded and his notation of judgment granting the divorce on the ground of abandonment is prima facie evidence of the cause for divorce.

■ In La Fountain v. Industrial Accident Commission, 13 Cal.App.2d 130, 56 P.2d 257, 258, the wife of a deceased employee had, prior to her husband's death, left him and *instituted* annulment proceedings, and the court denied her compensation benefits because it was decreed she had abandoned him and he was under no legal obligation to provide for her at the time of his death. In the case of In re Mooney's Will, Sur., 86 N.Y.S.2d 485, this language was used which we think fits the facts of the instant case: "The 'abandonment' effectual to defeat a right of election to take an intestate share in estate of deceased spouse against provisions of his will is that which would *warrant a judgment in favor of abandoned spouse in an action for separation.*"

■ The facts we have recited convince us Lela abandoned John Henry, so that she long ago ceased to be a dependent of his, and thereby surrendered her right to compensation within the purview of KRS 342.075(1) (a).

■ When we come to consider Jessie's contention that she is entitled to recover all the compensation involved herein, we must face and answer this question: Did she marry John Henry in good faith? We believe, as the Board found, that she did. It is well settled in Kentucky that an award of compensation to a bigamous widow is authorized if she entered into the marriage relation in good faith, believing the employee had been divorced from his wife, and if she lived in his household as a dependent. See Black Mountain Corporation v. Cobb, 260 Ky. 662, 86 S.W.2d 662; Franklin Fluorspar Co. v. Bell, 247 Ky. 507, 57 S.W.2d 481; Nall v. Wakenva Coal Co., 236 Ky. 598, 33 S.W.2d 631.

In view of the divorce suit which John Henry had filed against Lela and his declaration to Jessie that he had obtained a divorce, Jessie had reasonable information upon which to form a good faith belief that John Henry was not married to Lela at the time of the bigamous marriage. Such was the state of facts involved in the first two cases cited at the end of the previous paragraph. In these two cases the prospective husband declared to the woman he wanted to marry that he had a divorce and was free to marry and, although the woman who attempted marriage in each instance made no investigation in order to ascertain the true facts, it was held the information supplied, despite its falsity, formed a sufficient basis for believing the statements made.

Jessie testified her reason for the conviction that she and Jerome Holly had been divorced was the fact that he stated when he left her he intended to get a divorce. She admits no divorce papers were ever served upon her, nor was she ever notified of any divorce proceeding instituted by her husband. She brought about none herself. Although she revisited her former home in Virginia, and though she had relatives and friends remaining in that vicinity all the time, she admits she made no inquiry relative to her previous husband or whether or not a divorce had been granted. It was clearly established that Holly is now living in Detroit, Michigan, and that he never secured a divorce. It is argued that the foregoing facts afforded Jessie no foundation for the belief that she acted in good faith when she married John Henry.

While Jessie was clearly entitled to believe John Henry was free to marry her, as has been shown, was she clearly entitled to believe she was free to marry him? The fact that she made no attempt to establish the validity of her marriage to John Henry, during the fourteen years they lived together as if they were husband and wife, casts some doubt upon her bona fides. On the other hand, one might believe she could have considered the union legally sufficient, for certainly, throughout the years, if she had at any time been convinced she was not married to John Henry it could reasonably be supposed she would have taken steps to rectify that condition, surely suspecting at least that her property, or her possible compensation, rights would be affected by her impaired marital status. It was this line of reasoning which induced the Board to find Jessie had acted in good faith when she undertook to marry John Henry. We agree with this conclusion of the Board. Moreover, we conclude that any doubt as to Jessie's claim of good faith in respect to her marriage should be resolved in her favor, so as to effectuate the humane purpose of the Workmen's Compensation Act. See Consolidated Coal Co.'s Receivers v. Patrick, 254 Ky. 671, 72 S.W.2d 51.

We are of the opinion the board erred when it refused to award Jessie all of the compensation benefits, since we hold she married John Henry in good faith.

Wherefore, the judgment is reversed as to Lela and as to Jessie, the judgment is affirmed as to The Elk Horn Coal Corporation, and the case is ordered referred back to the Workmen's Compensation Board for further proceedings in conformity with this opinion.