JULIA MAE FIELDS, ALLEGED WHOLE DEPENDENT; IOLA TEACHER McMIL-
   LAN, MOTHER; LEVIE CASPER McMILLAN, LILLIAN McMILLAN
   LOFTIN, MARY McMILLAN HOWARD, NATHAN McMILLAN, MABEL
   McMILLAN SHARPE, BEADIE JANE CARLTON AND ETHEL MAE
   McMILLAN, BROTHERS AND SISTERS OF WILLIAM EDWARD McMILLAN,
   DECEASED (EMPLOYEE), v. HOLLOWELL & HOLLOWELL (EMPLOYER);
   PENNSYLVANIA THRESHERMEN & FARMERS MUTUAL CASUALTY
   INSURANCE COMPANY (CARRIER).

(Filed 25 November, 1953.)

**Master and Servant § 53d—**

   A woman who was living with an employee as his common law wife at
   the time of his death and 'who was actually wholly dependent upon him
   for support for some years prior to his death by accident arising out of and
   in the course of his employment is not a dependent of the deceased em-
   ployee within the purview of G.S. 97-39 and is not entitled to any part of
   the compensation payable under the provisions of the Workmen's Compen-
   sation Act.

APPEAL by claimant Iola Teacher McMillan from *Stevens, J.,* at May Civil Term, 1953, of SAMPSON.

Proceeding under North Carolina Workmen's Compensation Act to determine liability to claimants, and to which claimant.

When this case was called· for hearing before a single commissioner, counsel for claimants and counsel for defendants stipulated and agreed that the parties are subject to and bound by the provisions of the North Carolina Workmen's Compensation Act; that the Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Company is the insurance carrier; that the deceased employee, at the time of his death, was regularly employed by defendant employer at an average weekly wage of $25.00; that on 12 February, 1951, said employee sustained an injury by accident arising out of and in the course of his employment, resulting in his death; that defendants accepted liability; and that the only question before the Industrial Commission for decision is as to who is entitled to receive compensation on account of the death of deceased.

Thereupon the hearing commissioner heard the evidence offered, and, upon the evidence, made findings of fact, and, upon the facts found, made conclusions of law, denying compensation to the claimant, Julia Mae Fields, and awarding compensation to Iola McMillan, mother of deceased employee, as next of kin, etc.

The claimant, Julia Mae Fields, objected and excepted to the award so made, and appealed therefrom to the Full Commission.

Upon such appeal, and after hearing, and "for purposes of clarity, and to the end that the question involved may be squarely presented," the Full Commission vacated and set aside the opinion and award of the Hearing Commissioner, and adopted the following in lieu thereof: That this is a contest between claimants,—defendants appearing merely in the role of stakeholders; that the parties had stipulated as hereinabove shown, leaving for decision only the question as to who is entitled to receive the compensation due and payable on account of the death of William Edward McMillan.

Then, after narrating the competent evidence, the Full Commission made the following findings of fact, in so far as pertinent to question for decision:

"5. That at the time of his death the said William Edward McMillan left no children and left surviving his mother, Iola Teacher McMillan, and the seven brothers and sisters named in the caption, all of whom are over 21 years of age; that neither the mother nor any of the brothers and sisters were dependent, either in whole or in part, upon the said William Edward McMillan for support at the time of his death; that his father predeceased him and was not living at the time of his death.

"6. That William Edward McMillan first met the claimant Julia Mae Fields in Duplin County in 1939; that she bore him an illegitimate child on 3 December, 1946, which child lived only three days and died; that the said William Edward McMillan and Julia Mae Fields cohabited from time to time from 1939 until 1948, although not living together in the same house during that period; that due to difficulties with his family, the said William Edward McMillan left home in 1948, taking Julia Mae Fields with him, and established residence in Sampson County under the name of Edward McCullen and wife, Mae Lee McCullen; that from 1948 until the date of his death they lived together in the same house as man and wife, he furnishing the home, food and clothing, medical and dental services, and she performing the usual duties of a wife; that he provided the said Julia Mae Fields with all of her maintenance and subsistence from 1948 to the date of his death.

"7. That Iola McMillan is the mother of William Edward McMillan, deceased, and is his next of kin, his father being dead; that the brothers and sisters named in the caption are neither dependents, whole or partial, nor 'next of kin.' "

Thereupon the Commission, one member dissenting, for conclusion of law, posed this question: "Is a common law wife who was actually wholly dependent for support upon a deceased employee at the time of his death by accident arising out of and in the course of his employment entitled to compensation as such dependent under the provisions of the North Carolina Workmen's Compensation Act?". And the Commission concluded that the answer is "No," saying, however, that the evidence, fairly considered, shows: That Julia Mae Fields was living with William Edward McMillan at the time of his death, and was deriving her whole support from him; that no one was dependent upon him for support either in whole or in part; that unless Julia Mae Fields be regarded in law as the dependent of deceased employee compensation goes to the next of kin under G.S. 97-40, that is, the mother Iola McMillan, his father being dead, citing *Hamby v. Cobb & Homewood, Inc.,* 214 N.C. 813, and *Parsons v. Swift & Co.,* 234 N.C. 580; and that in no event do the brothers and sisters have any rights for the reason that they are neither dependents nor "next of kin."

The Commission goes on to say further that common law marriages are not recognized in North Carolina, and, hence, a common law wife has no status under the various statutes relating to widowhood; and that a common law marriage between the deceased employee in this case and Julia Mae Fields was consummated in North Carolina, and its validity or invalidity must be tested by the laws of this State,—hence there was no legal marriage between the parties and the rights of Julia Mae Fields, if any, must rest squarely upon the proposition as to whether she was a

dependent of the deceased employee within the meaning of the Compensation Act.

The Commission quotes from G.S. 97-39, that "A widow, a widower and/or a child shall be conclusively presumed to be wholly dependent for support upon the deceased employee. In all other cases, questions of dependency in whole or in part shall be determined in accordance with the facts as the facts may be at the time of the accident . . ." And then the Commission continues: "It is upon this statutory provision that Julia Mae Fields grounds her claim." However, "the Full Commission is of the opinion and so holds, that her position is untenable."

Then, after stating reasons for the above conclusion, the Commission further concluded that William Edward McMillan left no dependents, whole or partial, within the meaning of the Compensation Act, and that, consequently, compensation is payable to his mother, Iola McMillan, under the provisions of G.S. 97-40. (One member dissented.)

An award was made in accordance therewith, and Julia Mae Fields appealed therefrom to the Superior Court of Sampson County "upon errors of law."

When the matter came on for hearing in Superior Court, on such appeal, the presiding judge "being of opinion and finding as a fact and concluding as a matter of law that the plaintiff Julia Mae Fields was the sole and total dependent of William Edward McMillan, deceased employee, within the meaning of the Workmen's Compensation Act, and is entitled to an award for compensation as such dependent, and . . . being of the opinion that the exceptions of the plaintiff, Julia Mae Fields, to the conclusions of law and the award should be sustained, and the award of the North Carolina Industrial Commission should be vacated and set aside," entered judgment in accordance therewith, and remanded the cause to the North Carolina Industrial Commission "for the purpose of making an award to Julia Mae Fields, sole and total dependent of William Edward McMillan, deceased employee, and to her counsel of record."

The plaintiff Iola McMillan excepts to this judgment on grounds stated and to the signing of it, and appeals to Supreme Court, and assigns error.

*Earlie C. Sanderson for plaintiff McMillan, appellant.*
*Butler & Butler for plaintiff Fields, appellee.*

WINBORNE, J.  Is a woman who was purposely and knowingly living in unlawful cohabitation with an employee at the time of his death, a dependent of such employee within the meaning of the North Carolina Workmen's Compensation Act, Chapter 97 of General Statutes? The trial court was of opinion that she was such dependent, and so ruled and adjudged. This ruling is aptly challenged by this appeal.

As used in the North Carolina Workmen's Compensation Act, the term "death" as a basis for a right to compensation means only death resulting from an injury, that is, an injury by accident arising out of and in the course of the employment. G.S. 97-2 (f) and (j).

The term "compensation" means the money allowance payable to an employee or to his dependents as provided for in the Act. G.S. 97-2 (k).

Moreover, the Act provides that if death results proximately from such accident, the employer shall pay or cause to be paid to the dependents of the employee a weekly payment as specified. G.S. 97-38.

It is significant that the Act, in respect to dependents of an employee whose death results from an injury, as so defined, specifically defines who are meant by the terms, child, grandchild, brother, sister, parent, widow and widower. G.S. 97-2, subsections (1), (m), (n), and (o), and who are next of kin, father, mother, widow, child, brother or sister, in the event the deceased employee leaves no dependents. G.S. 97-40. The significance of these provisions is that these persons are only those to whom the deceased employee is under legal or moral obligation to support.

The Act also provides that "A widow, widower, and/or child shall be conclusively presumed to be wholly dependent for support upon the deceased employee. In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the facts as the facts may be at the time of the accident," and as such be entitled to receive the benefits for the full period specified. G.S. 97-39.

The appellee, in brief filed in this Court, states that she "does not claim compensation as the common law wife of the deceased." Hence we are not here concerned with that subject. And so conceding the appellee necessarily does not claim that she is the widow of the deceased employee. But she contends that "the workman who voluntarily assumes the support of any person, who looks to and relies upon him for the necessities of life," has made of that person a dependent. Hence she contends that she comes within the purview of the term "in all other cases," appearing in the statute G.S. 97-39. And apparently the trial court agreed with this position. But this Court does not so interpret the North Carolina Workmen's Compensation Act.

The term "in all other cases" in the connection in which it appears in the statute G.S. 97-39, means in all cases other than those of widows, widowers, and children, claiming to be dependents of the deceased employee,—dependency shall be determined in accordance with the facts as the facts may be at the time of the accident. Manifestly, a woman living in cohabitation with a man, to whom she is not married, is not within the purview of the term "in all other cases."

In this connection it is appropriate to note that in the case of *Reeves v. Parker,* 199 N.C. 236, 154 S.E. 66, there is this headnote, "The common

law wife of a deceased employee is not entitled to compensation under the provisions of the Workmen's Compensation Act." But a reading of the opinion, and of the record on appeal, discloses that while the Industrial Commission considered the question as to whether or not a woman living in fornication and adultery is entitled to compensation as a dependent, and ruled adversely to the claimant, the record shows that the claimant did not appeal therefrom. Hence what is said in the reported case in this respect is *dictum.*

Nevertheless, the opinion of the hearing commissioner, J. Dewey Dorsett, incorporated in Vol. 1 at page 277 of opinions in cases heard and determined by the North Carolina Industrial Commission, is appropriate to this appeal, and is worthy of citation. We quote in part as follows: "The following instances, involving the rights and obligations of husband and wife, demonstrate the utter absurdity of the suggestion that Frances Wilson was the lawful wife of George Wilson, for if George Wilson were alive today and living with Frances Wilson, under the admitted circumstances in this case:

"1. Frances Wilson could not maintain an action for divorce against him, for such an action presupposes a valid marriage . . .

"2. She could not maintain a proceeding for alimony against him, because that remedy implies a lawful marriage. . . .

"3. She could be compelled to testify against him in a criminal action, for before a wife will be excused from giving evidence against her husband, . . . it must be shown that she was lawfully married to him. . . .

"4. If, after having lived with Frances Wilson, under the admitted circumstances in this case, George Wilson had subsequently married another woman, he could not have been convicted of the crime of bigamy, because one of the essentials of that crime would be lacking, to wit, a prior legal marriage. . . .

"5. George Wilson and Frances Wilson were subject to indictment, and under the admitted facts in this case, would have been convicted, for fornication and adultery every day they lived together. . . .

"6. George Wilson, if he had abandoned and failed to support Frances Wilson, could not have been prosecuted, . . . because . . . abandonment by a husband presupposing a valid marriage, . . .

"7. Frances Wilson, upon the death of George Wilson, would not be entitled to a year's support, . . . 'The widow is invariably entitled to the benefit of the statutory provision for support and maintenance, but in order to have the benefit of such a statute, she must have been lawfully married to decedent.'

"This is the first time that the North Carolina Industrial Commission has been called upon to determine the status of parties to a marriage not performed in accordance with the plainly expressed provisions of our

statutes. C.S. 2493 (now G.S. 51-1). The decisions of this Commission in the instant case will necessarily be one of far reaching effect, and to sustain the so-called marriage in this case would not only be in conflict with the consistent holdings of our Supreme Court, but it would also be alien to the customs and ideas of our people, and would shock their sense of propriety and decency. Grave considerations of public policy forbid it. That it would tend to impair the public estimate of the sanctity of the marriage relation, there can be no doubt. It would obscure the certainty of the rights of dependents designated in our compensation law. It would open the door to false pretenses of marriage, and would invite and encourage impostors to contest the legitimate claims of helpless dependents, and finally, it would place ordained matrimony on the same level with common lasciviousness. We believe that the North Carolina Workmen's Compensation Act should be interpreted and construed as any other public statute, and the assumption that the General Assembly, in the enactment of this law, intended to reward parties to a relationship deliberately entered into in open defiance of the penal laws of our State and against public morals, is a violation of the most fundamental canons of statutory construction."

And the majority opinion of the present Industrial Commission follows the same line of reasoning in making decision in this case. It is said by them that to honor such a claim "would create a legal right out of an illegal relationship." It could be added that such a claim is conceived in sin, and shapened in iniquity.

To ascribe to the General Assembly of North Carolina an intention by implication to make of that class a compensable dependency is not accordant with the sound public policy established by the North Carolina Workmen's Compensation Act.

Hence, the judgment from which this appeal is taken will be, and it is hereby reversed, and the cause remanded to the end that judgment be rendered in accordance with the award of the majority of the Industrial Commission.

Reversed.