ROGERS v. UNIVERSITY MOTOR INN

[103 N.C. App. 456 (1991)]

---

SHEILA A. ROGERS, Widow, LEWIS ROGERS, Father, and KATHERINE ROGERS, Mother of EARL ROGERS, Deceased Employee, Plaintiffs v. UNIVERSITY MOTOR INN, Employer, and GREAT AMERICAN INSURANCE CO., Carrier, Defendants

No. 9010IC956

(Filed 16 July 1991)

Master and Servant § 79.2 (NCI3d)— workers' compensation— death benefits—separated spouse—adultery

The Industrial Commission erred by finding that the appellant did not qualify for death benefits as a widow who was separated from her husband for justifiable cause where the deceased had had a drinking problem and was abusive; appellant and deceased lived apart for the last 12 years of their marriage; appellant had instituted a support action but had abandoned it; and appellant had lived with another man, but that relationship terminated the year decedent died. N.C.G.S. § 97-2(14) states that the husband and wife must be living apart for justifiable cause, but there is no specific formula for the definition of justifiable cause. It would defy justice to require that the appellant endlessly subject herself to her husband's violent behavior and alcoholism in order to

## ROGERS v. UNIVERSITY MOTOR INN

[103 N.C. App. 456 (1991)]

qualify as a widow under the Workers' Compensation Act, and appellant's return to her husband in 1973 and cohabitation with him until their final separation did not condone his behavior. Furthermore, there is no evidence that the legislature intended an exception under the statute where adultery occurs in a legal marriage.

**Am Jur 2d, Workmen's Compensation § 201.**

APPEAL by plaintiff, Sheila A. Rogers, from the North Carolina Industrial Commission's Order of 3 May 1990 in which the Full Commission affirmed the decision of Deputy Commissioner Charles Markham in favor of Lewis and Katherine Rogers. Heard in the Court of Appeals 7 May 1991.

*James T. Bryan, III for plaintiff-appellant, Sheila A. Rogers.*

*Charles T. L. Anderson for plaintiff-appellees, Lewis Rogers and Katherine Rogers.*

*Teague, Campbell, Dennis & Gorham, by George W. Dennis, III and Kathryn G. Tate, for defendant-appellees.*

LEWIS, Judge.

This appeal presents the Court with the primary issues of whether the Full Commission committed reversible error: 1) with regard to certain findings of facts, 2) in concluding that the appellant was not a "widow" of Earl Rogers, living apart from him for "justifiable cause," and 3) in ruling that the appellant's adulterous affair barred her from qualifying as a widow under N.C.G.S. §§ 97-2(14) and 97-39.

The appellant Sheila Rogers was married to the deceased Earl Rogers in 1965. They remained married until Earl Rogers' death in February of 1987. The appellant and deceased lived apart for the last twelve years of their marriage. The appellant now seeks to overturn the Full Commission's opinion and award which adopted the deputy commissioner's order. The deputy commissioner's order denied the appellant's claim that she was a widow of Earl Rogers under N.C.G.S. §§ 97-2(14) and 97-39, and declared Lewis and Katherine Rogers, the parents of Earl Rogers, as next of kin to the deceased. The order then declared that the deceased's parents were entitled to any death benefits allowed under the Workers' Compensation Act.

The deputy commissioner made the following findings of facts in his order which was later adopted by the Full Commission:

Early in the marriage, Sheila became aware that Earl had a drinking problem, which continued until his death more than 20 years later. Earl was admitted to the Alcohol Rehabilitation Center at Butner for periods of 30 days in January, 1976; 30 days in January, 1978; and 28 days in November, 1984. Records of Orange County show that one Earl A. Rogers was convicted of public drunkenness January 4, 1973 and May 20, 1974. Records of North Carolina Memorial Hospital covering the period 1966 to 1986 indicate that Earl Rogers had been a chronic alcoholic. . . .

Earl Rogers became quarrelsome, aggressive and sometimes violent when he was drinking. He also was subject to hallucinations and paranoia. . . .

Earl was violent toward Sheila. He knocked her down and her ear was split open. He knocked her off the porch while drunk and broke her ankle. She received hospital treatment for these injuries in 1967, eight years before Sheila and Earl separated. On later occasions, about 1973, Earl, while drinking, threatened her with a knife, tried to cut her throat with a razor, and threatened to kill her with a hunting rifle. Also while drinking, Earl tore up the house, throwing food out of the house, and breaking windows. The window breaking episode occurred just before the couple separated in 1975.

At an indeterminate time, but after physical threats Earl made to her in 1973, Sheila left Earl, and she and her son [by a different man] . . . [moved in with a woman]. . . . This arrangement terminated in about three weeks because Earl came to the woman's house and annoyed them all so much that Sheila decided to move back in with Earl.

There was constant arguing, fussing and quarreling between Earl and Sheila during their marriage. Sheila had decided she did not want her son to grow up in this atmosphere, and that she couldn't take it any more. In the summer of 1975, during a quarrel, Earl told Sheila to get out. She left immediately. . . .

The incidents of violence by Earl against Sheila occurred in 1973 or before. The only violent episode specifically iden-

ROGERS v. UNIVERSITY MOTOR INN

[103 N.C. App. 456 (1991)]

tified with her final departure . . . was the breaking of windows in the trailer the day she left.

The appellant then moved to Roanoke with her son. After she moved, she had one telephone conversation with the deceased. He sounded drunk during that conversation. The appellant returned to Chapel Hill for a nonsupport suit which she later abandoned. That was the last time she saw the deceased. The commissioner also found that the appellant lived with another man for at least a year in Roanoke but the relationship terminated the year Earl Rogers died.

Our standard of review in this case is: (1) whether there was any competent evidence before the agency to support its findings of fact and (2) whether the findings of fact support the agency's conclusions of law. *McClean v. Roadway Express, Inc.*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982) (citation omitted). The appellant argues that there is insufficient evidence to support twelve of the commissioner's findings of fact. We have reviewed the transcript of the evidence and hold that there is competent evidence to support the commissioner's findings of fact.

Being bound by the commissioner's findings of fact, we must address whether those findings support the commissioner's conclusions of law that the appellant was not a widow of Earl Rogers. N.C.G.S. § 97-2(14) defines the term widow to include:

only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time.

N.C.G.S. § 97-2(14). By statute, a widow is "conclusively presumed to be wholly dependent for support upon the deceased employee," and shall receive benefits under the Workers' Compensation Act. N.C.G.S. § 97-39. Therefore, the appellant's actual dependence is not an issue in this case.

The commissioner made the following conclusions of law:

Sheila A. Rogers was not living with or dependent for support upon the deceased at the time of his death. As to his desertion, the "constructive abandonment" doctrine has long been recognized in this state, *Somerset v. Somerset* 3 N.C. App. 473, 475, 165 S.E.2d 33[, 34] (1969) and it may consist of either affirmative acts of cruelty or of a willful failure to

provide adequate support. *Powell v. Powell*, 25 N.C. App. 695, 699, 214 S.E.2d 808[, 811] (1975). Here the failure by Earl to provide support to Sheila Rogers after their separation was not willful, as she never asked him for support except in a law suit she abandoned. All the physical cruelties shown by the record to have been inflicted on Sheila by Earl predated their separation by about two years, and were condoned by her when she returned home after a brief separation about 1973. The same is true of the marital misconduct to which "justifiable cause" is usually equated.

. . .

In this case, Earl told Sheila to leave and she left, although she had earlier formed the intention to leave out of concern for her son's upbringing. She made a conscious choice not to remain in the family home, and adhered to that choice the remainder of her husband's life; Earl never disputed that choice.

In *Bass v. Mooresville Mills*, [11 N.C. App. 631, 182 S.E.2d 246 (1971)], the North Carolina Court of Appeals found "sound" authority from other jurisdictions to the effect that "justifiable cause," as employed in statutory provisions similar to G.S. 97-2(14), may not be interpreted as applicable to separations by mutual consent. The Court observed: "(T)here is no reason why a separated wife who has surrendered all right to look to the husband for support while he is living, should upon his death, receive benefits that are intended to replace in part the support which the husband was providing, or should have been providing." The Court of Appeals re-affirmed *Bass* in *Sloop v. Williams Exxon Service*, 24 N.C. App. 129, 210 S.E.2d 111 (1974) and quoted with approval the above passage. Here, Sheila Rogers surrendered her right to look to her husband for support in several ways, among them not pressing her suit for non-support about 1979; following a course of conduct indicating their mutual agreement not to live as husband and wife; and, finally, engaging in an adulterous relationship which preceded Earl's death and continued thereafter.

We hold that the findings of facts do not support these conclusions of law. In the two cases on which the commissioner relied, *Bass* and *Sloop*, the spouses were formally bound by separation agreements. The separation agreements legally defined and limited the parties' rights with respect to each other. Here, however, ac-

cording to the evidence the parties' separation was due to the marital misconduct of the husband. There is no evidence of a separation agreement.

N.C.G.S. § 97-2(14) states that to be a widow the husband and wife must be "living apart for justifiable cause . . . at such time." In *Jones v. Service Roofing & Sheeting Metal Co.*, 63 N.C. App. 772, 306 S.E.2d 460 (1983), this Court held that the relevant time for justifiable separation is for the "months immediately preceding his death." We agree that the period before his death may shed light on the cause of separation at his death. Here, although the plaintiff last endured Earl Rogers' violence and drinking years before his death, we must look to the totality of the circumstances to, determine the cause of separation.

There is no specific formula for the definition of "justifiable cause" under the statute. One must consider the complexity and history of the particular relationship in order to determine whether the appellant was separated for justifiable cause in the months before Earl Rogers' death. Here, we are bound by the commissioner's findings that Earl Rogers' heavy drinking never stopped, and that his alcoholism affected his behavior, causing him to be abusive, violent and paranoid. By the time of his death, the deceased had not stopped drinking. It would defy justice to require that the appellant endlessly subject herself to her husband's violent behavior and alcoholism in order to qualify as a widow under the Workers' Compensation Act.

With respect to the commissioner's conclusion that the appellant's return to her husband in 1973 condoned her husband's behavior, this Court in *Earp v. Earp*, 52 N.C. App. 145, 148, 277 S.E.2d 877, 879 (1981), held that a wife is not held to condone physical abuse and indignities by continuing to cohabit with her husband. There was no evidence in this case that the appellant forgave the deceased's behavior before she returned to him on the condition that the alcoholism and abuse cease. The evidence was that he continued to drink to excess after she returned. Therefore, as in *Earp*, the appellant did not condone the continued alcoholism of her husband by returning to him and cohabitating with him before their final separation. After considering the findings of fact by the Commission of the history of violence and alcoholism of the deceased, and its effect on his wife, we hold

that the appellant was separated from her husband for justifiable cause at the time of his death.

We must also consider the effect of the appellant's adulterous relationship on her right to collect under the Workers' Compensation Act. In his order, the commissioner cited *Fields v. Hollowell*, 238 N.C. 614, 78 S.E.2d 740 (1953), as authority that the appellant's adulterous affair barred her from qualifying as a widow under the Workers' Compensation Act. In *Fields*, the Supreme Court of North Carolina held that a woman who was living with an employee as his "common law wife" at the time of his death is not entitled to any compensation under N.C.G.S. § 97-39. The court held that she was not married to the employee and thus could not qualify as a "widow." Here, the appellant was legally married to the deceased. Any dicta in *Fields* that criticizes sexual relationships outside of marriage does not create an exception under the statute that where adultery occurs in a legal marriage, one cannot qualify as a widow under the Workers' Compensation Act. We do not condone adultery. However, it is not within our authority to create such an exception to N.C.G.S. §§ 97-2(14) and 97-39. To find that the legislature intended such an exception, it must be apparent in the statute. We see no evidence of such intention. If they so intend, the legislature will doubtless make it clear.

We hold that the Full Commission erred in finding that the appellant did not qualify as a widow who was separated from her husband for "justifiable cause," under the statute.

Reversed and remanded.

Judges EAGLES and GREENE concur.